**U. S. INDUSTRIES, INC., et al.,**
Petitioners,

v.

**UNITED STATES DISTRICT COURT FOR the SOUTHERN DISTRICT OF CALIFORNIA, CENTRAL DIVISION, et al., Respondents.**

No. 19619.

United States Court of Appeals
Ninth Circuit.

April 7, 1965.

Frank D. MacDowell, William MacD. Miller, Hill, Farrer & Burrill, Los Angeles, Cal., Gordon Johnson, San Francisco, Cal., James Baldwin, Los Angeles, Cal.,

Paul Haerle, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., Jesse R. O'Malley, Edward J. Riordan, Musick, Peeler & Garrett, Oliver F. Green, Paul, Hastings, Janofsky & Walker, John J. Hanson, John H. Sharer, Shari L. Nelson, Chester A. Skinner, Gibson, Dunn & Crutcher, Los Angeles, Cal., for petitioners.

William H. Orrick, Jr., Asst. Atty. Gen., Lionel Kestenbaum, Elliott H. Moyer, Attys., Dept. of Justice, Washington, D. C., for respondent.

Joseph L. Alioto, Maxwell M. Blecher, Matthew P. Mitchell, San Francisco, Cal., for "No-Joint" plaintiffs, real parties in interest.

John Joseph Hall, Los Angeles, Cal., for "Perovich" plaintiffs, real parties in interest.

Thomas C. Lynch, Atty. Gen. of Cal., Wallace Howland, Asst. Atty. Gen. of Cal., Mervin R. Samuel, Michael I. Spiegel, Deputy Attys. Gen. of Cal., San Francisco, Cal., for State of California as amicus curiae.

Before POPE, BARNES and ELY, Circuit Judges.

BARNES, Circuit Judge.

This is a petition for writ of prohibition and for writ of mandate (either or both, in the alternative). Petitioners seek to reseal a government memorandum which the district court has determined to be a proper object of federal discovery proceedings. This court's jurisdiction to grant the requested relief is derived from the "All Writs" statute, 28 U.S.C. § 1651.

The government document in dispute has been ordered unsealed for the use of plaintiffs in presently pending civil antitrust actions involving the concrete and coated steel pipe industry. The document had previously been prepared for sentencing purposes in the criminal antitrust proceeding from which these civil actions originate. Petitioners are corporations and corporate officers who had been indicted for violations of Section

1 of the Sherman Act, 15 U.S.C. § 1, as well as other individuals who assert they testified before the grand jury which returned the indictments.

The indictment against a portion of the present petitioners had been returned on March 10, 1964. On March 30, 1964, the defendants, over objection by the government, were permitted to plead *nolo contendere*. Upon acceptance of these pleas, Honorable Albert Lee Stephens, Jr., United States District Judge, before whom the pleas were made, directed counsel for the defendants and the government to submit confidential reports to the probation officer, to facilitate his role as an advisor to the court in the sentencing process.

Pursuant to the above directions, the government prepared a "Memorandum of Government Relating to the Imposition of Sentences and Fines" which was transmitted to the probation officer. This document, though not a grand jury document, was admitted by the government to contain information within the purview of the grand jury secrecy provision of Rule 6(e) of the Federal Rules of Criminal Procedure. That rule provides in pertinent part:

> *"Secrecy of Proceedings and Disclosure.* Disclosure of matters *occurring before the grand jury* [emphasis added] other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding \* \* \*."

The government, however, recognized the propriety of the district court judge exercising his discretion to permit the defense counsel to inspect the memorandum so long as the memorandum was filed under seal in the criminal cases. The criminal cases were subsequently concluded with the imposition of sentences.

Prior to the termination of the criminal proceedings, six private treble damage suits had been commenced against those defendants who had been indicted for criminal violations of the Sherman Act. Subsequent to the imposition of sentences in the criminal proceedings, plaintiffs in the civil actions sought access to the above mentioned government memorandum. To this end, the private plaintiffs served a deposition *subpoena duces tecum* on Stanley E. Disney, Chief of the Los Angeles Office of the Antitrust Division. The government responded by requesting by motion that Judge Stephens modify the sealing order so as to permit plaintiffs access to the memorandum and to allow for the quashing of the *subpoena duces tecum* that had been served on Mr. Disney. The matter came before Judge Stephens who, on his own initiative, transferred the motion for hearing before Judge Harry C. Westover, before whom the civil antitrust cases were pending.

Judge Westover ruled that the sealing order should be vacated and the subpoena quashed. On October 6, 1964, an order to this effect was entered.

The question presented for our consideration is whether the district court in so ordering disclosure, committed an abuse of discretion in permitting civil plaintiffs access to a government memorandum which had been sealed because of its references to grand jury proceedings.

█ A preliminary matter is raised in the brief of respondents (plaintiffs in the pending civil actions). They contend that the government memorandum is not in any way protected by the cloak of secrecy of Rule 6(e). The essence of respondents' argument is that Rule 6(e) was intended only to protect the actual transcript of the grand jury proceedings. We do not read Rule 6(e) in so limited a manner. Under respondents' construction of the Rule, any document prepared *after* the grand jury proceedings—even a detailed summary or other exact reiteration of what transpired before the grand jury—would be outside the protection of Rule 6(e). Such a construction would

peel back in its entirety the cloak of secrecy that presently surrounds the proceedings. Lawmakers have not yet seen fit to allow such a wholesale disregard for the traditional secrecy of the grand jury.

 In addition to misconstruing the scope of Rule 6(e), respondents argue the inapplicability of the Rule without any first-hand knowledge of the extent to which the memorandum unveils what transpired before the grand jury. Respondents seek to minimize the admission by the government to the effect that its memorandum clearly comes within the protective policy of Rule 6(e). We do not see how respondents' conjectural estimates as to the extent to which the memorandum reflects grand jury proceedings can overcome the admission by a co-party in interest, and a co-party that had in fact prepared the memorandum, that Rule 6(e) was applicable. All parties who were given the opportunity to inspect the document in question are unanimous in their opinion that the policy issues of grand jury secrecy were put in issue by this request for access to the document's contents.

 But the fact that Rule 6(e) applies to the government memorandum is not dispositive of the issue presented by this petition. The secrecy that surrounds the grand jury is not absolute in nature. Rule 6(e) itself expressly provides that matters occurring before the grand jury can be disclosed where the court so directs. The question thus remaining, and the real question here presented, is whether the district court abused its discretion in ordering a disclosure in the present case.

Petitioners eloquently argue in their briefs that the unsealing order of the district court violates our traditional notions of grand jury secrecy. By the government's admission, the presentencing memorandum contains direct references to "testimony," presumably given before the grand jury; to permit its disclosure to the public, argue petitioners, would destroy the cloak of secrecy. Petitioners recognize, however, as they must, that the right to maintain secrecy of grand jury proceedings is not an absolute one. They assert that in order to dispense with the secrecy a "particularized and compelling need" must be demonstrated. For example, we believe petitioners would recognize that were a grand jury witness subsequently indicted for perjury on the basis of his grand jury testimony, notions of fair play and justice would require that he have an opportunity to examine the grand jury transcript. Similarly, petitioners would, we believe, concede the right of a United States Attorney charged with contempt for his conduct before the grand jury to examine the transcript of those proceedings. In the facts of the present case, however, petitioners see no compelling need for disclosure such as exists in the above examples.

 We agree with petitioners that a violation of the traditional grand jury secrecy should only be permitted upon a showing of "particularized and compelling need." But we cannot treat this test *in vacuo*. We must take recognition first of the fact that whether such a "need" exists is a matter designedly left initially to the discretion of the trial judge. In the absence of an absolute prohibition against disclosure, an exercise of judicial discretion is manifestly required. Secondly, it must be kept in mind that, in making a determination of when to permit a disclosure of grand jury proceedings, we are to examine, not only the need of the party seeking disclosure, but also the policy considerations for grand jury secrecy as they apply to the request for disclosure there under consideration. In other words, if the reasons for maintaining secrecy do not apply at all in a given situation, or apply to only an insignificant degree, the party seeking disclosure should not be required to demonstrate a large compelling need. This view of the necessity for a court to perform such a weighing process is amply demonstrated, we believe, by the remarks of Mr. Justice Brennan in his dissenting opinion in Pittsburgh Plate

**22**

Glass Co. v. United States, 360 U.S. 395, 403, 79 S.Ct. 1237, 1242, 3 L.Ed.2d 1323 (1959):

> "Grand jury secrecy is, of course, not an end in itself. Grand jury secrecy is maintained to serve particular ends. But when secrecy will not serve those ends or when the advantages gained by secrecy are outweighed by a countervailing interest in disclosure, secrecy may and should be lifted, for to do so in such a circumstance would further the fair administration of criminal justice."

Our task of examining the policy considerations behind grand jury secrecy is facilitated by the universal adherence to the reasons expounded in United States v. Amazon Ind. Chem. Corp., 55 F.2d 254 (D.Md.1931), to-wit:

> "(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

These reasons have been consistently quoted with approval. See, e. g., United States v. Procter & Gamble, 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); United States v. Rose, 215 F.2d 617, 628–29 (3d Cir. 1954).

In applying these policy reasons for secrecy to the facts of the present case, it immediately becomes apparent that the first three reasons have no relevance. As noted by the State of California in its *amicus curiae* brief, the memorandum was not prepared or filed until subsequent to the entry of the *nolo* pleas, and the motion to unseal followed the complete termination of the criminal proceedings. The grand jury thus had completed its investigation and returned its indictments long before the memorandum was prepared or its disclosure was sought by respondents. The fifth policy reason stated in Amazon is not appropriate to the present case because indictments were returned against all of the corporate petitioners and six of the individual petitioners. This leaves as the only basis for a compelling reason to maintain the traditional grand jury secrecy that of insuring untrammeled disclosure by *future* grand jury witnesses.

Respondents contend that the policy of secrecy for the purpose of encouraging untrammeled testimony is inapplicable to the present case because those whom the witness most had to fear have already inspected the government memorandum, viz., their own employers.

■ Petitioners seek to rebut this contention with evidence showing that witnesses fear retaliation from numerous sources other than their employers. We think there is some little validity to the contentions of each of the litigants as to what inhibits prospective grand jury witnesses. But we feel that, in the present setting, such issue is not controlling. We have examined the memorandum. We are convinced that if, on examination of the memorandum, the district judge determined that the references to the grand jury proceedings were so particularized that *future* grand jury witnesses might become inhibited if this present memorandum is disclosed, the district judge could, with little effort, delete the references to witness names or take any other action which best will maintain the document's substance while protecting the anonymity of the witnesses. Cf. United States v. Grunewald, 162 F.Supp. 621, 622 (S.D.N.Y.1958).

■ Because this approaches a matter of first impression, however, we have

taken upon ourselves the task of "policing" the memorandum. This task would ordinarily be undertaken by the trial court. Having examined the document in camera as the trial court might have done, we have deleted such portions of the memorandum as we have deemed necessary in respect to the policy considerations behind the rule of secrecy of grand jury investigations. We have returned five originals of the document, as deleted (but without disclosing the deletions), to the District Court for filing, without seal, in the five actions below; retaining one copy as so revised for our own Court files, and retaining all excised copies in our own files, under seal.

We realize that the need of the present respondents for disclosure is not as pressing or consistent with the notions of justice as it is, for example, in the perjury and contempt illustrations we allude to above. Yet, we cannot say the respondents' need is illusory. This court's opinion in Olympic Refining Co. v. Carter, 332 F.2d 260 (1964), cert. denied November 9, 1964, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175, typifies judicial appreciation of the benefits of a liberal discovery procedure. The facts in the present case lend additional support to a liberal discovery ruling, for here the document in question is of government origin and the party opposing disclosure has had an opportunity to inspect its contents.[1] It therefore seems highly inequitable and averse to the principles of federal discovery to allow one party access to a government document and not the other. It is particularly inequitable when the policy reason for denying the other party access to the document is essentially inapplicable to the given situation. We cannot say that the district court judge has abused his discretion by ordering the document unsealed.

The petition is denied, and the district court order to unseal the government memorandum is sustained, subject to the modifications required by this opinion.

---

1. Counsel for petitioners assert that they alone, not their clients, had access to the memorandum. But knowledge of opposing counsel in itself prejudices respondents. Moreover, petitioners' counsel were not precluded from conveying what they learned from their inspection of the memorandum to their clients.