UNITED STATES of America, Plaintiff,

v.

John William SHERMAN, and Therese Ann Coupez, Defendants;

Seattle Times Company, a Delaware Corporation, and John Arthur Wilson, Petitioners-Appellants.

SEATTLE TIMES COMPANY, a Delaware Corporation, and John Arthur Wilson, Petitioners,

v.

UNITED STATES DISTRICT COURT FOR the WESTERN DISTRICT OF WASHINGTON, Respondent.

Nos. 78–2492, 78–2493.

United States Court of Appeals, Ninth Circuit.

Sept. 14, 1978.

P. Cameron DeVore (argued), of Davis, Wright, Todd, Reise & Jones, Seattle, Wash., for defendants.

Jerald Olson, Asst. U. S. Atty. (argued), Seattle, Wash., for plaintiff.

Before TRASK, GOODWIN, and TANG, Circuit Judges.

TANG, Circuit Judge.

This opinion explains the circumstances under which this court issued its order of July 24, 1978 granting petitioner's application for emergency relief, and the reasons such relief was appropriate.

On July 12, 1978, a jury in the Western District of Washington returned a guilty verdict against John William Sherman and Therese Ann Coupez. Sherman and Coupez had been accused of armed bank robbery, and each had admitted the acts charged in the indictment, but each claimed that the acts were justified based on political principles. During the course of the trial, Coupez had written to the jurors at their homes, urging them to ignore the judge's instructions. Sherman and Coupez were members of the George Jackson Brigade, a revolutionary organization devoted to destroying the governments of the United States and the State of Washington. The Brigade claimed responsibility for a series of bombings and bank robberies in the Seattle area; its activities received widespread publicity.

The Sherman-Coupez trial also received considerable attention from the Seattle news media.

After receiving the verdict, the trial judge made a series of remarks from the bench which 1) forbade the jurors from discussing the case further with anyone, 2) told the jurors that they would be protected from harassment and 3) ordered everyone, including the news media, to stay away from the jurors. Members of the news media, including representatives of the Seattle Times (petitioner in this action), were present in the courtroom when these remarks were made.

After the trial judge's oral pronouncements, members of the news media and their counsel attempted to persuade the judge to modify or retract his order, but were unsuccessful. The judge also refused to put the order in writing. The Seattle Times then filed a notice of appeal, and in the alternative, a petition for a writ of mandamus. This court heard argument on the afternoon of July 24, 1978, and immediately afterwards issued its order vacating that portion of the district court's order that prohibited the news media from contacting and interviewing jurors.[1]

The first question which had to be answered was the jurisdiction of this court to hear this matter. Two alternatives were presented: direct appeal and mandamus. We decided that there is no remedy on direct appeal, but mandamus would lie. The appeal was dismissed July 24, 1978.

■ In our opinion, there is no jurisdiction to hear an appeal. The Seattle Times was not a party to the action below and therefore lacks standing to bring an appeal. *See* 9 Moore's *Federal Practice*, ¶ 203.06 (1975). The trial judge's statement that his order applied to "everyone" including the news media is insufficient to make the Seattle Times a party.

Nor are we persuaded that this is a collateral order under the doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We are aware that the Third Circuit, en banc, has held a similar order was an appealable final order under *Cohen; United States v. Schiavo*, 504 F.2d 1 (3rd Cir. 1974) *cert. denied* 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688. *Schiavo* is distinguishable since it involved a pre-trial order while this case involved an order issued after the trial was completed. Further, the decision in *Schiavo* is based on the court's supervisory powers, a concept as compatible with mandamus as with appeal, *see La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). The decision of the Fifth Circuit in *United States v. Gurney*, 558 F.2d 1202 (5th Cir. 1977), *cert. denied sub nom. Miami Herald Publishing Co. v. Krentzman*, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978), is also distinguishable. *Gurney* involved the media's access to various materials produced during the trial and is not an order regulating media conduct after the trial had concluded.

■ This court has authority to issue a writ of mandamus under 28 U.S.C. § 1651, the All Writs Act. Seattle Times has standing to seek the writ under the tests set forth in *Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); the Seattle Times' ability to gather the news has been interfered with (injury in fact) and such interference is clearly within the ambit of the First Amendment (zone of interests). Two recent circuit court cases have held that mandamus, rather than ap-

---

1. The full text of the order is as follows:

 The Writ of Mandamus is granted and the portion of the order of the District Court which purports to proscribe the news media from contacting and interviewing jurors is vacated.

 Nothing herein shall be construed as creating a duty upon jurors to respond to such interviews nor limiting the power of the District Court to protect jurors from harassment.

 As to jurors unwilling to talk to the news media, they are not compelled to answer questions and if persistent interrogation is attempted, the juror should report such attempts to the District Court for further proceedings.

 The appeal in No. 78–2492 is dismissed.

peal, is the proper remedy in similar situations. *See Central South Carolina Chapter, Society of Professional Journalists v. Martin,* 556 F.2d 706 (4th Cir. 1977) *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 771 (1978); *CBS, Inc. v. Young,* 522 F.2d 234 (6th Cir. 1975). We agree with the reasoning of those cases.

 Because the petitioners have standing and the court has authority to issue the writ does not mean that the writ will necessarily issue. Mandamus is a drastic remedy and is to be used only in extraordinary circumstances; in large measure the issuance of the writ is a matter of the court's discretion. To guide in the exercise of that discretion, this court has formulated five factors which should be considered:

> 1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires, 2) the petitioner will be damaged or prejudiced in a way not correctable on appeal, 3) the district court's order is clearly erroneous as a matter of law, 4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules, and 5) the district court's order raises new and important problems, or issues of first impression.

*Bauman v. United States District Court,* 557 F.2d 650, 654–55 (9th Cir. 1977) (citations omitted).

The first, second and fifth factors clearly weigh in favor of issuance of the writ. As shown above, we believe there is no remedy on appeal. The case clearly raises important problems of First Amendment law. While there are several cases dealing with restraints on the press before or during a trial, we have been unable to discover cases discussing restraints imposed after trial.

 The third factor, clear error, requires more extended discussion. The Supreme Court has recognized that newsgathering is an activity protected by the First Amendment, *Branzburg v. Hayes,* 408 U.S. 665, 681, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), and the order here clearly restrained the media in their attempts to gather news. As the order imposed this restraint prior to

any attempt to contact the jurors, there is a heavy presumption against its constitutional validity. *Bantam Books v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). The government in order to sustain the order must show that the activity restrained poses a clear and present danger or a serious and imminent threat to a protected competing interest, *Wood v. Georgia,* 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); the restraint must be narrowly drawn and no reasonable alternatives, having a lesser impact on First Amendment freedoms, must be available, *Carroll v. President and Commissioners of Princess Anne,* 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). We believe the government has failed to meet this heavy burden.

 Since the trial had concluded, there was no possibility that allowing the jurors to speak to newsmen would deprive Sherman or Coupez of a fair trial. Those cases dealing with the so-called "free press-fair trial" issue are not applicable here. The justifications offered for the order are to enable the jurors to serve on future jury panels and to protect the jurors from harassment. Less restrictive alternatives are clearly available for each of these claimed threats. If a juror's impartiality were to be questioned because the juror has spoken to the media that could be discovered on future voir dire and the juror excused. The district court could, in the alternative, excuse all of these jurors from further service. We stress that the inability to serve on future juries is not such a serious nor an imminent threat to justify this restraint and that alternatives are easily available.

In regard to protecting the jurors from harassment, we also fail to see a clear and present danger. The jurors individually, perhaps, may not regard media interviews as harassing. If harassment should occur, the court might properly then act to correct the actual intrusion suffered, but this order is too broad.

 Nothing in this opinion should be construed as requiring jurors to speak to

the media or anyone else. A juror may speak or remain silent as he desires. The district court's order, by depriving the media of the opportunity to ask the jurors if they wished to be interviewed, was clearly erroneous as a matter of law.[2] Therefore, the third factor mentioned in *Bauman* is met.

Since *Bauman* holds that not all factors need be present for the writ to issue, we decline to discuss the fourth factor. There is enough here for the writ to issue.

Petition granted.

**2.** Readers familiar with the Supreme Court's opinions in *Houchins v. KQED, Inc.,* —— U.S. ——, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978), and *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), should not read into our decision any expression of opinion on the so-called right-of-access issue sometimes presented by newsgatherers. In this case a representative of the press was the only petitioner who appeared. We do not have before us and express no opinion on the rights of other persons in the courtroom at the time of the challenged order.