842 F.2d 1574
 91 A.L.R.Fed. 793, 56 USLW 2630, 15
Media L. Rep. 1305
 UNITED STATES of America, Plaintiff-Appellee,
v.
Malcolm R. SCHLETTE, Defendant,
Estate of William O. Weissich, Petitioner-Appellant,
Marin Independent Journal, Applicant-Appellant.
ESTATE OF William O. WEISSICH, Petitioner,
Marin Independent Journal, Petitioner,
v.
UNITED STATES DISTRICT COURT FOR the NORTHERN DISTRICT OF
CALIFORNIA, Respondent,
United States of America, Real Party in Interest.
 Nos. 87-1106, 87-1155, 87-7430 and 87-7436.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 15, 1988.
Decided March 31, 1988.
As Amended May 23, 1988.
 
 Mark L. Musto, Goldstein & Phillips, San Francisco, Cal., for Estate of William O. Weissich.
 Judith R. Epstein, Crosby, Heafey, Roach & May, Oakland, Cal., for Marin Independent Journal.
 William T. McGivern, Jr., Chief Asst. U.S. Atty., N.D. Cal., for plaintiff-respondent-appellee.
 Appeal from the United States District Court for the Northern District of California, and on Petitions for Writ of Mandamus.
 Before ANDERSON, NOONAN and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 Malcolm R. Schlette pleaded guilty to being a felon in possession of a firearm, see 18 U.S.C.App. Sec. 1202(a)(1) (repealed 1986), and was placed on probation. While on probation, he walked into William O. Weissich's law office and shot him dead. Later that same day, Schlette committed suicide to avoid imminent capture by the police. This sad and unfortunate murder-suicide might have received only moderate publicity but for the circumstance that Weissich, the former Marin County District Attorney, had successfully prosecuted Schlette for arson in 1955. From the time Schlette was incarcerated until his death, he never forgave Weissich for having obtained his conviction. He vowed to kill Weissich, a vow he kept in 1986.
 
 
 2
 The Weissich murder became an immediate cause celebre. The Estate of William O. Weissich (the "estate") and the Marin Independent Journal (the "newspaper") applied to the district court for release of Schlette's presentence investigation report, which had been prepared when Schlette was placed on probation for the firearm offense. The estate and the newspaper also sought release of a psychiatric report and a postsentence probation report. The estate argued that it required access to these documents to determine whether the court's probation service knew that Schlette posed a threat to Weissich and should have warned Weissich of a danger to his life. The newspaper stated that its interest was in learning what information the district court had available to it when it placed Schlette on probation. These requests were made under Federal Rule of Criminal Procedure 32(c) and the Freedom of Information Act, 5 U.S.C. Sec. 552 ("FOIA"). The newspaper also asserted a first amendment right of access to the documents.
 
 
 3
 The government opposed disclosure. It argued the documents are confidential court records and should not be released without a showing of compelling need for disclosure, a need it contended was lacking. The district court refused to order disclosure. It concluded that the documents are confidential and neither the estate nor the newspaper had shown a compelling need for disclosure. The district court did not consider the newspaper's first amendment argument in favor of access to the documents. The FOIA requests were rejected on the ground that the documents were court records and therefore not subject to the FOIA.
 
 
 4
 The estate and the newspaper each appealed the district court's order denying release of the documents. On our own motion, we consolidated the appeals and ordered the appellants to show cause why the appeals should not be dismissed for lack of standing under United States v. Brooklier, 685 F.2d 1162 (9th Cir.1982). The estate and the newspaper then filed petitions seeking a writ of mandamus ordering the district court to release the sought-after documents.
 
 
 5
 * JURISDICTION
 
 
 6
 Under our decision in United States v. Brooklier, 685 F.2d 1162 (9th Cir.1982), third parties who have been denied access to proceedings in which they were not parties in the district court do not have standing to appeal. Id. at 1165 (citing United States v. Sherman, 581 F.2d 1358, 1360 (9th Cir.1978)). Because neither the estate nor the newspaper was a party to Schlette's underlying criminal proceeding, neither has standing to appeal from the district court's order denying access to the requested documents. Id. Therefore, the appeals of the estate and the newspaper are dismissed. We agree with the estate and the newspaper, however, that they have standing to seek review of the district court's order by petition for a writ of mandamus. Id. We now consider these petitions.
 
 II
 STANDARD OF REVIEW
 
 7
 It is the general rule that a district court's decision whether to release a presentence report is reviewed for an abuse of discretion. United States v. Charmer Indus., Inc., 711 F.2d 1164, 1177 (2d Cir.1983); United States v. Walker, 491 F.2d 236, 238 (9th Cir.), cert. denied, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974). The unstated rationale for this rule seems to be "[e]very court has supervisory power over its own records and files." See Nixon v. Warner Communications, Inc., 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). Thus, because the presentence report and related documents are court records, the disclosure of which to third parties is not expressly provided for by any statute, control of these documents rests within the discretion of the district court. Cf. Valley Broadcasting Co. v. United States Dist. Court, 798 F.2d 1289, 1294 (9th Cir.1986) ("We review a district court's denial of access to its records for abuse of discretion."); U.S. Indus., Inc. v. United States Dist. Court, 345 F.2d 18, 21 (9th Cir.) ("In the absence of an absolute prohibition against disclosure [of confidential grand jury documents], an exercise of judicial discretion is manifestly required."), cert. denied, 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965).
 
 
 8
 A court abuses its discretion when its "decision is based on an erroneous conclusion of law or when the record contains no evidence on which [it] rationally could have based that decision." Hill v. United States Immigration & Naturalization Serv. (In re Hill), 775 F.2d 1037, 1040 (9th Cir.1985). Under this deferential standard of review, this court does not substitute its judgment for that of the district court. Barona Group of the Capitan Grande Band of Mission Indians v. American Management & Amusement, Inc., 824 F.2d 710, 724 (9th Cir.1987). Rather, we will reverse only if we have "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Id.; see also United States v. Kramer, 827 F.2d 1174, 1179 (8th Cir.1987) (abuse of discretion means court failed to consider significant factor, or "an irrelevant or improper factor is considered and given significant weight," or it commits clear error of judgment in weighing all proper factors). It also is our rule that mandamus lies to correct an abuse of discretion. Goldblum v. National Broadcasting Corp., 584 F.2d 904, 906 n. 2 (9th Cir.1978) (citing Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953)).
 
 III
 ANALYSIS
 
 9
 A. Basis for Disclosure of Presentence Reports
 
 1. Disclosure Under Rule 32(c)
 
 10
 Federal Rule of Criminal Procedure 32(c) deals with the preparation, contents and disclosure of presentence investigation reports. See Julian v. United States Dep't of Justice, 806 F.2d 1411, 1414-15 (9th Cir.1986), cert. granted, --- U.S. ----, 107 S.Ct. 3209, 96 L.Ed.2d 695 (1987). The probation service of the district court prepares the report, which includes information about the defendant's history, prior criminal record, financial condition, and circumstances affecting his behavior. Fed.R.Crim.P. 32(c)(2)(A). The report also contains a classification of the offense charged and of the defendant under the Sentencing Commission guidelines, 28 U.S.C. Sec. 994(a), see Fed.R.Crim.P. 32(c)(2)(B), as well as a statement about the impact of the charged crime on the victim. Fed.R.Crim.P. 32(c)(2)(D).
 
 
 11
 Rule 32(c) requires the district court to release the presentence report to the defendant and his counsel at a reasonable time before the sentencing hearing. Fed.R.Crim.P. 32(c)(3)(A). The defendant, however, is not entitled to see "any final recommendation as to sentence" contained in the report. Id. The court also may withhold from the defendant or his counsel those portions of the report "that in the opinion of the court contain[ ] diagnostic opinions which, if disclosed, might seriously disrupt a program of rehabilitation; or sources of information obtained upon a promise of confidentiality; or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons." Id. If the district court concludes there is information in the report which should not be disclosed under Rule 32(c)(3)(A), "the court in lieu of making the report or part thereof available shall state orally or in writing a summary of the factual information contained therein to be relied on in determining sentence, and shall give the defendant and the defendant's counsel an opportunity to comment thereon." Fed.R.Crim.P. 32(c)(3)(B). The report is to be returned to the probation officer after the sentencing hearing, unless the court in its discretion otherwise directs. Fed.R.Crim.P. 32(c)(3)(E).
 
 
 12
 The presentence report not only assists the district court in sentencing a defendant. Julian, 806 F.2d at 1415. The report also is used by the Bureau of Prisons and the Parole Commission in assessing the prisoner for purposes of incarceration, treatment and, eventually, release. Id. Given the diverse uses to which the presentence report is put, it is not surprising that the factual accuracy of the report has been the key concern motivating revisions of Rule 32(c). See 3 C. Wright, Federal Practice and Procedure: Criminal 2d Secs. 522, 524 (1982 & Supp.1987); Fennell & Hall, Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts, 93 Harv.L.Rev. 1613, 1628-30 (1980).
 
 
 13
 Since the adoption of Rule 32(c) in 1944, there has been an ongoing debate over the disclosure of a presentence report. See 3 C. Wright, supra, Sec. 524; Fennell & Hall, supra, 93 Harv.L.Rev. at 1630-35. When the rule first appeared, it contained no provision governing disclosure to the defendant. 3 C. Wright, supra, at 63. In the face of the rule's silence, many courts assumed the report to be confidential, but concluded it was within the court's discretion to disclose the report to the defendant or his counsel. Id. at 64. Concern about courts imposing sentences based on erroneous information in the report led the Rules Advisory Committee to recommend that the report be mandatorily disclosed to the defendant. Objections by judges and probation officers resulted in the 1966 version of the rule, which left disclosure of the report to the discretion of the court. Id. at 65-69; Fennell & Hall, supra, 93 Harv.L.Rev. at 1632-34. The debate was not to end here, however. By 1974, such support in favor of mandatory disclosure had arisen that Congress amended Rule 32(c)(3) to require the sentencing court to disclose the report to the defendant and his counsel upon request. 3 C. Wright, supra, Sec. 524, at 71-74; Fennell & Hall, supra, 93 Harv.L.Rev. at 1634-35.
 
 
 14
 Concerns about the effectiveness of the 1974 version of Rule 32(c)(3) led the Federal Judicial Center to commission an empirical study of the implementation of the rule's mandatory disclosure provision. This study revealed that a substantial number of defendants failed to request disclosure of the report, or that disclosure occurred so hurriedly before sentencing that defendants were not given a meaningful opportunity to challenge the factual accuracy of the report. See Fennell & Hall, supra, 93 Harv.L.Rev. at 1640-49. The conclusions of the empirical study led to the 1983 revision of Rule 32(c)(3)(A), which requires mandatory disclosure of the report to the defendant and his counsel, regardless of the defendant's failure to request the report. See Fed.R.Crim.P. 32 advisory committee notes to 1983 amendment. The sentencing court now has an affirmative duty to ensure that the defendant and his counsel have read the report and discussed it before sentencing. Fed.R.Crim.P. 32(a)(1)(A). And under 18 U.S.C. Sec. 3552, adopted as part of the Sentencing Reform Act of 1984, Pub.L. No. 98-473, tit. II, c. II, Sec. 212, 98 Stat. 1837, 1987, the presentence report must be disclosed to the defendant, his counsel, and the attorney for the government, at least ten days before sentencing, unless the defendant waives the minimum period.
 
 2. Disclosure to Third Parties
 
 15
 Rule 32(c)(3)(A) does not address release of the report to third parties. Julian v. United States Dep't of Justice, 806 F.2d 1411, 1418-19 (9th Cir.1986), cert. granted, --- U.S. ----, 107 S.Ct. 3209, 96 L.Ed.2d 695 (1987); accord United States v. McKnight, 771 F.2d 388, 390 (8th Cir.1985),cert. denied, 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986); United States v. Anderson, 724 F.2d 596, 597 (7th Cir.1984); United States v. Charmer Indus., Inc., 711 F.2d 1164, 1173 (2d Cir.1983); United States v. Figurski, 545 F.2d 389, 391 (4th Cir.1976). Because the rule says nothing about third-party disclosure, "most district courts rely on custom and case law in responding to third-party requests." Fennell & Hall, supra, 93 Harv.L.Rev. at 1684. In general, most courts explain that disclosure to a third party is appropriate if disclosure "is necessary to serve the ends of justice." Berry v. Department of Justice, 733 F.2d 1343, 1352 (9th Cir.1984) (collecting cases). But because most courts also consider presentence reports confidential, there are no reported cases in which disclosure of the report to a third party has been found necessary to serve the ends of justice. United States v. Charmer Indus., Inc., 711 F.2d 1164, 1173 (2d Cir.1983) (collecting cases).[1]
 
 
 16
 When called upon "to balance the desirability for confidentiality against the need of the moving party for disclosure," id., a strong presumption in favor of confidentiality has been established by the courts. See, e.g., id. at 1174 (observing that many courts use a "standard approaching that for the release of grand jury materials" as a benchmark for assessing third-party disclosure requests); see also United States v. McKnight, 771 F.2d 388, 390 (8th Cir.1985) ("Generally, pre-sentence reports are considered as confidential reports to the court and are not considered public records, except to the extent that they or portions of them are placed on the court record or authorized for disclosure to serve the interests of justice."), cert. denied, 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986); United States v. Anderson, 724 F.2d 596, 598-99 (7th Cir.1984) (reiterating "ends of justice" standard for third-party requests; observing that secrecy of presentence reports is of "critical importance" and that "[a]ny broader disclosure requirement ... would upset the delicate balance underlying Rule 32(c)(3). Confidentiality of presentence reports is vitally important to the efficacy of the sentencing process.").
 
 
 17
 In the case now before us, the district court explained that if presentence reports generally are not kept confidential, courts will not receive sufficient information on which to make informed sentencing decisions. The court denied disclosure because it concluded that the confidentiality principle outweighed the need of the estate and the newspaper to see the requested documents.
 
 
 18
 This "free flow of information" rationale is one commonly asserted by courts in support of nondisclosure of presentence reports. E.g., McKnight, 771 F.2d at 390; Anderson, 724 F.2d at 598 (citing United States v. Greathouse, 484 F.2d 805, 807 (7th Cir.1973), which concluded that confidentiality is necessary to protect the "sentencing court's ability to obtain data on a confidential basis from the accused and from sources other than the accused for use in the sentencing process"); Charmer, 711 F.2d at 1171. Without confidentiality, so the argument runs, courts will not receive "as complete a set of facts as is possible for fashioning an appropriate sentence." McKnight, 771 F.2d at 390; see Charmer, 711 F.2d at 1171. Encompassed within the "completeness of the information" argument are several subsets of objections to disclosure of presentence reports. Confidentiality, it is said, ensures that sources of confidential information do not dry up. Charmer, 711 F.2d at 1171; Greathouse, 484 F.2d at 807. A related argument is that confidentiality helps prevent retaliation by the defendant against those who provide confidential information. Charmer, 711 F.2d at 1175 (quoting Hancock Bros. v. Jones, 293 F.Supp. 1229, 1234 (N.D.Cal.1968), which explained that "[r]eprisal by the defendant is only one event to guard against in promoting free and untrammeled disclosures by persons who have information necessary for sentencing ... purposes"). Finally, the argument has been made that routine disclosure will cause the quality of presentence reports to decline. See Comment, Proposed Changes in Presentence Investigation Report Procedures, 66 J.Crim.L. & Criminology 56, 58 (1975).
 
 
 19
 Those who opposed the 1974 revision of Rule 32(c) to require mandatory disclosure of presentence reports to defendants made each of these arguments against disclosure. See Fennell & Hall, supra, 93 Harv.L.Rev. at 1632; McLauchlan, Privacy and the Presentence Report, 54 Ind.L.J. 347, 352-53 (1979); Comment, supra, 66 J.Crim.L. & Criminology at 58. Each of the arguments has been proven empirically false. The Federal Judicial Center's study of Rule 32(c)'s mandatory disclosure provision, which led to the 1983 amendment of the rule to further increase disclosure of reports to defendants, reached the following conclusions:
 
 
 20
 In general, we found that disclosure has been achieved without the serious repercussions predicted by opponents of the mandatory disclosure rule. The character of the sentencing proceeding has not changed, the sources of information have not diminished appreciably, and the effectiveness of the presentence report has not decreased. To the contrary, mandatory disclosure has had a positive impact on many aspects of the presentence investigation and report, and, most important, it has brought greater objectivity to the entire sentencing process.
 
 
 21
 Fennell & Hall, supra, 93 Harv.L.Rev. at 1689. The results of this study have been endorsed by the Rules Advisory Committee, see Fed.R.Crim.P. 32 advisory committee notes on 1983 amendments, and have influenced this court, too.
 
 
 22
 In Berry v. Dep't of Justice, 733 F.2d 1343 (9th Cir.1984), we considered a request for disclosure of a presentence report in the hands of the Bureau of Prisons and Parole Commission. The request was made under the Freedom of Information Act, 5 U.S.C. Sec. 552 ("FOIA"). Citing the Fennell & Hall study, we rejected the notion that "disclosing presentence reports will chill sources of information for the report and decrease the report's accuracy." Id. at 1355. We observed that "this contention has been raised for decades, and has now been disproved, both analytically and empirically." Id. Our rejection of the "free flow of information" argument rested on empirics, see id. (citing Fennell & Hall, supra ), and on common sense. Id. Because Rule 32(c) mandates disclosure of significant portions of the presentence report to the defendant, we concluded that "[i]f any chilling of sources were to occur, this disclosure would certainly trigger it." Id.
 
 
 23
 In Berry, we also rejected the argument that disclosure to third parties will result in "an avalanche of requests." Berry, 733 F.2d at 1352. Relying on the experience of those jurisdictions in which presentence reports either are routinely made part of the public record or are subject to FOIA disclosure, we observed that "[e]xperience suggests that third party requests for presentence reports would not be common." Id. & n. 14. Similarly, we rejected the notion that disclosure to third parties might intrude improperly on a defendant's privacy interest. Id. at 1352. In rejecting the privacy argument, we suggested that harm from violation of privacy interests was speculative. Id. at 1352 n. 14. But we did not discount the privacy interest entirely. We observed that under exemption 6 to the FOIA, disclosure of a defendant's "previous criminal record, early life and developmental history, school and employment record, mental and physical condition, religion, habits, attitudes, associates and other pertinent factors" cannot be revealed to third parties seeking disclosure under the FOIA if such disclosure would constitute "a clearly unwarranted invasion of privacy." Id. at 1353 (citations and footnote omitted) (considering 5 U.S.C. Sec. 552(b)(6)).[2] Thus, privacy concerns still may militate against disclosure in a given case. But when the defendant is dead, as in the present case, this ground for nondisclosure is foreclosed. Privacy interests are personal to the defendant and do not survive his death. Cf. Wehling v. Columbia Broadcasting Sys., 721 F.2d 506, 509 (5th Cir.1983) ("In Texas, a suit for defamation is personal to the one about whom statements are made."); Stein-Sapir v. Birdsell, 673 F.2d 165, 167 (6th Cir.1982) (concluding that under Ohio law, "actions for libel or slander abate with the death of either party"); Gruschus v. Curtis Publishing Co., 342 F.2d 775, 776 (10th Cir.1965) (defamation action did not survive death of defamed party). And there is no evidence in this case that the privacy interests of anyone other than the dead defendant may be implicated by disclosure of the contents of the presentence report and related documents.
 
 B. Disclosure in the Present Case
 
 24
 Although many of the oft-asserted justifications for confidential treatment of presentence reports are not valid, we do not mean to suggest that presentence reports should be released to third parties routinely. A presentence report is prepared primarily for court use, although an ancillary function is to aid agency decisionmaking. Julian v. United States Dep't of Justice, 806 F.2d 1411, 1415 (9th Cir.1986), cert. granted, --- U.S. ----, 107 S.Ct. 3209, 96 L.Ed.2d 695 (1987). Consequently, a third party who asks a court to disclose the report must make some threshold showing that disclosure will serve the ends of justice. See Berry v. Department of Justice, 733 F.2d 1343, 1352 (9th Cir.1984). As we have observed in a somewhat analogous circumstance,
 
 
 25
 [w]e cannot treat this test [that is, demonstration of a need for disclosure that serves the end of justice] in vacuo. We must take recognition first of the fact that whether such a "need" exists is a matter designedly left initially to the discretion of the trial judge. In the absence of an absolute prohibition against disclosure, an exercise of judicial discretion is manifestly required.
 
 
 26
 U.S. Indus., Inc. v. United States Dist. Court, 345 F.2d 18, 21 (9th Cir.), cert. denied, 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965).[3] But whether disclosure is warranted in a given case requires the court to balance the need for disclosure against the reasons for confidentiality. Id. "In other words, if the reasons for maintaining [confidentiality] do not apply at all in a given case, or apply only to an insignificant degree, the party seeking disclosure should not be required to demonstrate a large compelling need." Id. (emphasis added).
 
 1. The Newspaper's Demonstration of Need
 
 27
 We turn first to the newspaper's request for disclosure. This request is based on two grounds. First, the newspaper contends that it has a first amendment right of access to the desired documents. Second, the newspaper asserts that disclosure will serve the public interest by informing the public about the sentencing process. Because we conclude that the public interest rationale supports disclosure given the unusual facts of this case, we do not reach the newspaper's first amendment argument.[4]
 
 
 28
 The interest in disclosure asserted by the newspaper has its roots in the common law right "to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Communications, Inc., 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978) (footnotes omitted). The common law right of access accomplishes many of the purposes served by the first amendment. Valley Broadcasting Co. v. United States Dist. Court, 798 F.2d 1289, 1293 (9th Cir.1986). Consequently, a common law right of access has been acknowledged when the party seeking access has manifested a "desire to keep a watchful eye on the workings of public agencies." Nixon, 435 U.S. at 598, 98 S.Ct. at 1312. Similarly, access to court records has been justified by "a newspaper publisher's intention to publish information concerning the operation of government." Id. The common law right to inspect and copy court records, however, is not absolute. Id. at 598, 98 S.Ct. at 1312; Valley Broadcasting, 798 F.2d at 1293. Neither is this common law right "of constitutional dimension," Valley Broadcasting, 798 F.2d at 1293, nor is it given the same level of protection accorded constitutional rights. Id. But it also is clear that "[t]he importance of public access to judicial records and documents cannot be belittled." In re Special Grand Jury, 674 F.2d 778, 781 (9th Cir.1982).
 
 
 29
 The Supreme Court has noted some limits on the common law right of access:
 
 
 30
 Every court has supervisory power over its own records and files, and access has been denied where court files might have become vehicles for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of the "painful and sometimes disgusting details of a divorce case." Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, or as sources of business information that might harm a litigant's competitive standing.
 
 
 31
 Nixon v. Warner Communications, 435 U.S. at 598, 98 S.Ct. at 1312 (citations omitted); see also Valley Broadcasting, 798 F.2d at 1293 (quoting Nixon ). Here, however, the newspaper's interest in the Schlette presentence report and related documents is not founded on a base motive to publish an exploitive account of the sad details of Malcolm Schlette's life and William Weissich's death. Rather, the newspaper wants to publish information that bears on the workings of the criminal justice system. The public is legitimately interested when a former public prosecutor is murdered by a felon whose conviction he obtained. This public interest is particularly strong when a felon who has vowed over a thirty-year period to kill his prosecutor shoots the prosecutor dead while out on probation for a firearm offense.
 
 
 32
 In a recent case, we permitted the press access to a post-trial memorandum filed by the government in response to a sentence reduction motion made by a defendant convicted in connection with the highly publicized John deLorean cocaine episode. CBS, Inc. v. United States Dist. Court, 765 F.2d 823 (9th Cir.1985). In CBS, we stated in dicta that allowing access to a document under Federal Rule of Criminal Procedure 35 "is not to be read to disapprove the practice of keeping presentence reports confidential." Id. at 826. Our opinion in the present case does not conflict with this statement in CBS. We agree that presentence reports are confidential documents. But "confidentiality" is not some talismanic utterance that can justify a refusal to disclose the contents of a presentence report when a sufficient showing supporting disclosure has been made. Just what showing may be sufficient, however, must be assessed on a case-by-case basis. The extent of the showing will vary as the need for confidentiality varies. See U.S. Indus., Inc. v. United States Dist. Court, 345 F.2d 18, 21 (9th Cir.) ("If the reasons for maintaining [confidentiality] do not apply at all in a given case, or apply only to an insignificant degree, the party seeking disclosure should not be required to demonstrate a large compelling need."), cert. denied, 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965). In any event, in the face of a showing of a reasonable basis for disclosure, confidentiality cannot rest on some general rationale that has been proven empirically false, or on some reason for nondisclosure which we have determined to be an inappropriate basis for maintaining confidentiality. See Berry, 733 F.2d at 1352-56.
 
 
 33
 In CBS we observed that "[t]he penal structure is the least visible, least understood, least effective part of the justice system; and each ... failure is consequent from the others. Public examination, study, and comment is essential if the corrections process is to improve." CBS, 765 F.2d at 826. The newspaper has a legitimate interest in explaining to a concerned public the means by which sentencing decisions are made. Making the public aware of how the criminal justice system functions surely serves the ends of justice. Publishing sufficient information to allow the public to join in a dialogue about the courts and the treatment of defendants can only have a positive impact on the public's perception of our judicial system. If the system has flaws, it is all the better that these flaws be exposed and subjected to public comment.
 
 
 34
 No legitimate reason for preserving the secrecy of the Schlette presentence report, the psychiatric report,[5] or the postsentence probation report has been articulated by the district court or by the government. The district court described the newspaper's asserted interest in disclosure as nothing more than a vehicle for satisfying public curiosity about the sentencing process involved in this remarkable case. The district court commented that: "the general interest of the public in the operation of the system of criminal justice" was insufficient to justify disclosure in the face of the need to ensure a free flow of information to the sentencing court. As we have previously stated, however, the newspaper has a common law right of access to the presentence report and related documents. We have also explained that the "free flow of information" argument is not a valid justification for nondisclosure. No other legitimate basis for maintaining confidentiality has been articulated by either the district court or the government. Accordingly, the newspaper is entitled, subject to any appropriate redacting by the district court as hereafter mentioned, to see the requested documents and make notes from them.
 
 2. The Estate's Demonstration of Need
 
 35
 In support of its motion for disclosure, the estate argues that it requires access to the presentence report and the related documents so that it can determine whether it has a cause of action for negligence based upon the probation service's failure to warn Weissich of the threat posed to him by Schlette. The government argues that this is nothing more than a request for disclosure made to facilitate a civil lawsuit, and as such it is an insufficient showing of need on which to predicate an order releasing an otherwise confidential court record.
 
 
 36
 In general, we agree with the government. Presentence reports should not be made available to civil plaintiffs to save them time in preparing lawsuits. However, "a central element in the showing required of a third person seeking disclosure is the degree to which the information in the presentence report cannot be obtained from other sources." United States v. Charmer Indus., Inc., 711 F.2d 1164, 1177 (2d Cir.1983). In the present case, unlike Charmer, the information contained in the presentence report cannot be obtained elsewhere. It is what is in the report, and the related documents, that is important. The government argues that the estate can depose Schlette's probation officers and the psychiatrist who evaluated him and obtain this information. These procedures, however, will not produce the report. The theory of the estate's contemplated action against the probation service is that the probation service knew Schlette posed a threat to Weissich and did nothing about it. We express no opinion on whether the estate may state a claim based upon this theory. For purposes of considering disclosure of the requested documents, however, it is sufficient that the requested documents are relevant to a contemplated claim and that the information contained in them cannot be obtained elsewhere. If the probation service knew of Schlette's threats to kill Weissich and failed to include this information in its report to the court, this could be an important fact. If the probation service knew of Schlette's threat to kill Weissich and reported it to the court, and the court decided Schlette should be placed on probation, this is also relevant. It may be the case that the probation service had no information whatsoever to suggest that at the time Schlette was placed on probation for the firearm violation he was a danger to Weissich. But whatever information is actually contained in the report, it is the report itself, and the related documents (the psychiatric report and the postsentence probation report) which are relevant to the estate's contemplated action.
 
 
 37
 We conclude that the estate has made a sufficient threshold showing of a legitimate need for disclosure of the presentence report, the psychiatric report, and the postsentence probation report. As with the newspaper's request for disclosure, neither the court nor the government has articulated any valid reason for maintaining confidentiality of these documents.
 
 IV
 CONCLUSION
 
 38
 In denying the third-party requests by the newspaper and by the estate for disclosure of the presentence report, the psychiatric report, and the postsentence probation report, the district court abused its discretion. The district court's refusal to disclose the contents of the requested documents was based upon its conclusion that the documents were confidential. However, it did not articulate any legitimate reason for maintaining confidentiality of the documents in the face of sufficient showings for disclosure. The government has not advanced any valid reason for nondisclosure. Therefore, disclosure is appropriate. However, in order to assure the continued confidentiality of any confidential information in the presentence report and the related documents, we remand this case to the district court to redact such information from the requested documents, consistent with this opinion, which the district court determines is the kind of information, under Rule 32(c)(3)(A), which should remain confidential. When the redacting has been completed, the district court shall permit the newspaper and the estate to read and make notes from the presentence report, the psychiatric report, and the postsentence probation report. All copies of these documents shall remain in the custody of the district court and probation service, unless the district court in its discretion otherwise directs. See Fed.R.Crim.P. 32(c)(3)(E).
 
 
 39
 WRIT ISSUED. REMANDED to the district court.
 
 
 
 [1]
 The Second Circuit in the Charmer case concluded that a presentence report should not be released to a third party "unless that person has shown a compelling need for disclosure to meet the ends of justice." Charmer, 711 F.2d at 1176 (emphasis added). The Second Circuit rested its analysis on the nature of presentence reports, which it analogized to grand jury materials, and the decision in Hancock Bros. v. Jones, 293 F.Supp. 1229 (N.D.Cal.1968). We need not decide whether the Second Circuit's burden of proof standard is in conflict with our standard in third-party disclosure cases, see, e.g., Berry v. Department of Justice, 733 F.2d 1343, 1352 (9th Cir.1984) (observing that courts will order disclosure when "necessary to serve the ends of justice"). Even under the arguably higher "compelling need" standard set by Charmer, as we discuss hereafter, a sufficient threshold showing has been made in the present case to warrant disclosure, absent a legitimate reason to maintain confidentiality
 
 
 [2]
 We also affirmed, under the FOIA, a district court's order for disclosure of a presentence report in the hands of the Parole Commission in Julian v. United States Dep't of Justice, 806 F.2d 1411 (9th Cir.1986), cert. granted, --- U.S. ----, 107 S.Ct. 3209, 96 L.Ed.2d 695 (1987). Because we conclude that disclosure is warranted in the present case without reference to the FOIA, we decline to reach the estate's and the newspaper's arguments that presentence reports in the hands of the court's probation service should be subject to FOIA disclosure
 
 
 [3]
 In U.S. Industries, we considered a third-party request for disclosure of a sentencing memorandum prepared by the federal government for the district court's use in sentencing a defendant convicted of a criminal antitrust offense. The memorandum contained confidential grand jury material. It is the general rule that "a violation of the traditional grand jury secrecy should only be permitted upon a showing of 'particularized and compelling need.' " U.S. Industries, 345 F.2d at 21. In its Charmer decision, the Second Circuit relied on the analogy to grand jury materials to justify requiring a third party seeking access to a presentence report to show a compelling need for disclosure. United States v. Charmer Indus., Inc., 711 F.2d 1164, 1175-76 (2d Cir.1983). Even if we were to agree that this is the appropriate standard of proof, see supra note 1, our U.S. Industries decision makes clear that whether a compelling need exists depends on the circumstances of each case
 
 
 [4]
 In Associated Press v. United States Dist. Court, 705 F.2d 1143, 1145 (9th Cir. 1983), we stated that 'the public and press have a first amendment right of access to pretrial documents in general.' We also stated that "[t]here can be little dispute that the press and public have historically had a common law right of access to most pretrial documents." Id (citation omitted). In CBS, Inc. v. United States Dist. Court, 765 F.2d 823, 825 (9th Cir. 1985), we stated: "We begin with presumption that the public and the press have right of access to criminal proceedings and to documents filed therein. The right of access is grounded in the First Amendment and in common law.... " (emphasis added; citations omitted)
 
 
 [5]
 We reject the government's argument that the psychiatric report relied on by the probation service in making its report on Schlette should not be disclosed because it is protected by the psychotherapist-patient privilege. The government is not a proper party to assert this privilege on behalf of Schlette. Schlette is dead and only his personal representative arguably would have standing to assert the privilege. Moreover, it is clear that the psychiatric report is part of the presentence report. See Fed.R.Crim.P. 32(c)(2)(A). Rule 32 simply provides that the defendant cannot have access to any psychiatric evaluation included in the report, if the court concludes that access would have a negative effect on the defendant's rehabilitation. Because Schlette is dead, disclosure of the psychiatric evaluation cannot impair any rehabilitative efforts