UNITED STATES of America, Plaintiff,

v.

Shakur SHABAZZ, a/k/a Perry Devon Lowe, and Brother Shakur, Rickie Darnell Sykes a/k/a Reverend Sykes, Deminica Marche Vance, Dwight David Wayne Ford, Jr., Toni Lacava Newborn, Dana Tyrone Royal, and Orlando A. Vance, Jr., Defendants.

No. CR 97–183–FR.

United States District Court,
D. Oregon.

Feb. 6, 1998.

Order Clarifying Decision Feb. 27, 1998.

Kristine Olson, United States Attorney, Allan M. Garten, Assistant United States Attorney, Portland, OR, for plaintiff.

Steven T. Wax, Federal Public Defender, Christopher J. Schatz, Assistant Federal Public Defender, Portland, OR, for defendant Shakur Shabazz.

Linda Friedman Ramirez, Linda Friedman Ramirez, P.C., Portland, OR, for defendant Rickie Darnell Sykes.

Scott Erik Asphaug, Portland, OR, for defendant Deminica Marche Vance.

John E. Storkel, Storkel & Grefenson, P.C., Salem, OR, for defendant Dwight David Wayne Ford Jr.

Andrew Bates, Reid & Bates, Portland, OR, for defendant Toni Lacava Newborn.

Robert A. Goffredi, Portland, OR, for defendant Dana Tyrone Royal.

Steven B. Ungar, Portland, OR, for defendant Orlando A. Vance, Jr.

## OPINION

FRYE, District Judge.

The matters pending before the court are:

*The Motions of Defendant Toni Lacava Newborn*

Defendant Newborn's motion for severance (# 113);

Defendant Newborn's motion for early production of Jencks Act material (# 115);

*The Motion of Defendant Dwight David Wayne Ford, Jr.*

Defendant Ford's motion to suppress statements (# 146);

*The Motions of Defendant Shakur Shabazz*

Defendant Shabazz's motion to suppress evidence (# 149);

Defendant Shabazz's motion to dismiss count one (# 150);

Defendant Shabazz's motion to suppress photographic identifications (# 152–1) and for production of photos used in photo-array identifications (# 152–2);

Defendant Shabazz's motion for disclosure of identity(ies) of informant(s) (# 153);

Defendant Shabazz's motion in limine re order for Jencks' materials (# 154);

Defendant Shabazz's motion for bill of particulars (# 156);

Defendant Shabazz's motion for leave to file supplemental motions (# 157);

Defendant Shabazz's request for summary of expert witness testimony (# 158);

Defendant Shabazz's motion for issuance of third-party subpoenas (FRCP 17(c)) (# 161–1) or, in the alternative, for an order directing the government to obtain and produce records (# 161–2);

*The Motions of Defendant Rickie Darnell Sykes*

Defendant Sykes' motion to quash subpoena (FRCP Rule 17(c)) (# 188);

Defendant Sykes' motion for protective order/modification of subpoena (# 189);

Defendant Sykes' amended motion for protective order/modification of subpoena 17(c) (# 213);

*The Motion of Defendant Orlando A. Vance, Jr.*

Defendant Orlando A. Vance Jr.'s motion for *in camera* inspection (# 220–1), redaction (# 220–2) and protective orders regarding confidential material (# 220–3);

*The Motions of Defendant Dana Tyrone Royal*

Defendant Royal's motion for severance of defendants (# 130);

Defendant Royal's motion to suppress statements (# 163);

Defendant Royal's motion to dismiss count one—duplicity (# 164);

Defendant Royal's motion for early production of Jencks Act material (# 165);

Defendant Royal's motion to reveal statements of co-conspirators (# 168);

Defendant Royal's motion for a bill of particulars (# 215); and

*The Motion of Plaintiff United States of America*

Motion of the United States for pretrial discovery and notice (# 179).

## BACKGROUND

On June 10, 1997, a federal grand jury returned a 40–count superseding indictment charging the defendants with aiding and abetting in violation of 18 U.S.C. § 2; conspiracy in violation of 18 U.S.C. § 371; possession and passing of counterfeit securities in violation of 18 U.S.C. § 513; and bank fraud in violation of 18 U.S.C. § 1344.

The superseding indictment charges the defendants with a fraudulent scheme relating to the negotiation of more than $570,000 worth of counterfeit and stolen checks in the States of Oregon and Washington. The superseding indictment charges that defendant Shakur Shabazz caused counterfeit checks to be created; that defendants Shabazz, Sykes, Vance, Ford, Newborn, Royal and Vance, Jr. would recruit individuals to deposit counterfeit checks in federally-insured institutions knowing that the checks were counterfeit; and that the individuals who deposited the counterfeit and stolen checks would then withdraw a portion of the money allegedly deposited almost immediately, before the federally-insured institution could detect the fraud. The superseding indictment further charges that defendants Shabazz, Sykes, Vance, Ford, Newborn, Royal and Vance, Jr. concocted a story that the depositors of the counterfeit and stolen checks were to use if they were contacted by a bank or law enforcement official: namely, that the counterfeit checks represented a loan or grant from a fictitious entity known as "Corporate

America" or some other fictitious institution or organization.

## ANALYSIS

### DEFENDANT TONI LACAVA NEWBORN

*Defendant Newborn's Motion for Severance (# 113)*

■ Defendant Toni Lacava Newborn moves the court for an order severing her trial from that of co-defendant Shakur Shabazz on the grounds that 1) the quantum of evidence is radically disproportionate between her and co-defendant Shabazz; 2) she may call co-defendant Shabazz to testify to the nature of their relationship and the events which took place between January of 1995 and June of 1997 which she expects will exonerate her from any participation in or knowledge of the alleged conspiracy; and 3) the potential for mutually exclusive and inconsistent defenses is possible.

The government opposes severance on the grounds that defendant Newborn has failed to point out what defenses she contends are mutually exclusive or to explain what testimony she expects defendant Shabazz to present that will tend to exculpate her.

· ■ In *United States v. Cruz*, 127 F.3d 791 (9th Cir.1997), the court stated that "[s]everance should be granted only if a serious risk exists that a joint trial would compromise a particular trial right of a properly joined defendant or prevent the jury from reliably determining guilt or innocence." *Id.* at 798 (citing *Zafiro v. United States*, 506 U.S. 534, 538, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)). An antagonism between the defenses of various defendants or the desire of one defendant to exculpate himself by inculpating another defendant is insufficient to cause a court to sever counts. *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 993, 136 L.Ed.2d 874 (1997). In order to be entitled to severance on the basis of an alleged mutually antagonistic defense, "a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *Throckmorton*, 87 F.3d at 1072. A joint trial may be particularly appropriate where the defen-

dants are charged with a conspiracy, and the relevant evidence is admissible against all participants in the conspiracy. *Cruz*, 127 F.3d at 799.

Defendant Newborn has presented no facts which would show that she has a defense mutually exclusive from any other co-defendant or that co-defendant Shabazz has any exculpatory evidence to provide in her defense. There are no grounds to support a severance in this conspiracy case. Any issues of disproportionate evidence can be dealt with through jury instructions.

Defendant Newborn's motion for severance (# 113) is denied.

*Defendant Newborn's Motion for Early Production of Jencks Act Material (# 115)*

Defendant Newborn moves the court for an order requiring the United States Attorney to disclose, produce, and make available for examination and copying by defendant Newborn all statements of any witnesses that the government expects to call at trial no later than twenty days prior to trial.

The government responds that it has agreed to provide any Jencks Act material ten days before trial and has provided to the defendants for review the FBI 302 reports of witnesses Rivera and Smoot.

The Jencks Act, 18 U.S.C. § 3500, requires the government, after a witness has testified, to produce any statement, as defined in the Act, that the witness has made which relates to the subject matter of the witness' testimony.

There is no present controversy. Defendant Newborn's motion for early production of Jencks Act material (# 115) is deemed moot.

### DEFENDANT DWIGHT DAVID WAYNE FORD

*Defendant Ford's Motion to Suppress Statements (# 146)*

Defendant Ford moves the court to suppress the statements that he made to Special Agent Michael Ruffner, Special Agent Joseph R. LaMonica, and any other agent of the FBI on or about November 5, 1996 and November 15, 1996 on the grounds that the

failure of the FBI Special Agents to read to him his rights under *Miranda* constitutes a violation of his Fifth and Sixth Amendment rights under the United States Constitution.

The government contends that the statements made by defendant Ford should not be suppressed because the statements were made while he was not in custody, and they were voluntarily made. The government has submitted the affidavit of Special Agent LaMonica, who states, in relevant part:

38. On November 5, 1997, in response to a telephone call from me requesting an interview, Dwight David Ford, Jr., voluntarily came to the Portland office of the FBI. He was interviewed by myself and Agent Michael E. Ruffner. Before any questioning, Mr. Ford, Jr. was told that he was not under arrest and that he was able to leave at any time. At the end of the interview, Mr. Ford, Jr. left.

39. On November 15, 1997, Mr. Ford, Jr. again came to the Portland office of the FBI to be interviewed. Mr. Ford, Jr. was with his father, Dwight Ford, a former Portland Police officer. At the end of the interview, Mr. Ford again left.

40. Mr. Ford, Jr. was not advised of his Miranda Rights during either interview because he was not in custody. In fact, he was told that he was not under arrest and free to leave at any point. The interviews were conducted in a library/conference room in the FBI office. During the first interview, there were two agents present. During the second interview, I was the only agent present.

Affidavit of Special Agent Joseph R. LaMonica, pp. 11–12 (attached to the Government's Consolidated Response in Opposition to Motions of Defendants Shabazz, Royal and Ford).

There are no facts in the record at this stage in the proceedings to support the suppression of any statement made by defendant Ford. Defendant Ford's motion to suppress statements (# 146) is denied.

### DEFENDANT SHAKUR SHABAZZ

*Defendant Shabazz's Motion to Suppress Evidence (# 149)*

Defendant Shabazz moves the court for an order suppressing all evidence seized from his person and all statements made by him following the warrantless entry into his residence and the seizure and detention of his person by federal law enforcement agents on April 28, 1997. In addition, defendant Shabazz "moves the Court to find that the contemporaneous warrantless seizure and movement of a U–Haul truck and Mercedes–Benz automobile containing his personal property also offended the Fourth Amendment." Motion to Suppress Evidence, pp. 1–2.

The government contends that the arrest of defendant Shabazz by federal law enforcement agents on April 28, 1997 was a lawful arrest because these law enforcement agents had probable cause to believe that defendant Shabazz had committed a crime, and the circumstances surrounding his arrest were exigent. Therefore, even though the arrest was made without an arrest warrant, it was a lawful arrest. The government points out that the arrest of defendant Shabazz was made in conjunction with the Portland Police Bureau, which had an outstanding warrant for the arrest of defendant Shabazz. The government further points out that the search of the U–Haul and the Mercedes–Benz was made on April 29, 1997, pursuant to the issuance of a search warrant by United States Magistrate Judge Donald C. Ashmanskas.

### A. Facts Stated by Special Agent LaMonica in his Affidavit

■ The FBI has been investigating this case since June of 1996. Prior to April 28, 1997, the FBI spoke to bank investigators, reviewed counterfeit checks, and interviewed most of the individuals who had deposited fraudulent checks, as well as the co-conspirators, Rickie Sykes and Jit Lim, who printed many of the counterfeit checks. Special Agent LaMonica of the FBI had determined that defendant Shabazz was not only involved, but that he was the ring leader of the scheme and was responsible for having the counterfeit checks printed.

Based upon this investigation, on April 28, 1997, the FBI began surveillance of 4725 N. Haight Avenue, Portland, Oregon, the resi-

dence known by the FBI to be the residence of defendant Shabazz. Upon arriving at this residence, FBI agents observed a U–Haul truck parked in the alley behind the residence, FBI agents observed defendant Shabazz walk from the U–Haul truck to the residence and then hitch an auto trailer to the U–Haul truck.

FBI agents concluded that there was probable cause to believe defendant Shabazz was involved in the crime of possession and passing of stolen and counterfeit checks and the crime of bank fraud, and that he was getting ready to leave the area. Based on this belief, FBI agents contacted the United States Attorney and the Portland Police who were informed of the outstanding warrant for the arrest of defendant Shabazz.

FBI agents and Portland Police officers went to the front door of defendant Shabazz's house and were told by the individual who answered the knock on the door that defendant Shabazz was downstairs in the basement. This individual accompanied law enforcement officers to the basement where defendant Shabazz was arrested.

Defendant Shabazz was placed in the back seat of an FBI vehicle. He told his brother-in-law something such as "make sure that the property gets to where it belongs." Defendant Shabazz refused to provide law enforcement agents with the key to the U–Haul truck or to tell them who had possession of the key. Law enforcement agents, believing that there was evidence of criminal activity in the U–Haul truck and that others might move it, secured and stored the U–Haul and the Mercedes–Benz until the next day when a search warrant was issued and the vehicles were searched.

### B. *Ruling of the Court*

There is no evidence in this record contrary to the statements of Special Agent LaMonica. The court finds that there was probable cause to arrest defendant Shabazz, as well as exigent circumstances to cause the arrest to be made without a warrant. Defen-

dant Shabazz's motion to suppress evidence (# 149) is denied.

### *Defendant Shabazz's Motion to Dismiss Count One (# 150)*

■ Defendant Shabazz moves the court for an order "requiring the government to demonstrate a factual basis for charging, in Count One, a single conspiracy in this matter encompassing all named defendants and unindicted co-conspirators or, in the alternative, for an order dismissing Count One on the ground that the real prospect of prejudicial variance posed by proof of multiple conspiracies, rather than the single conspiracy charged in said count, constitutes an impairment of Mr. Shabazz' right ... not to be tried *en masse* with numerous other individuals and with respect to numerous acts for which he bears no responsibility." Motion to Dismiss Count One, pp. 1–2.

The government contends that no such showing is required by the government, and that defendant Shabazz's argument goes only to the sufficiency of the evidence to be decided by the trier of fact.

In *United States v. Bauer*, 75 F.3d 1366 (9th Cir.1996), the court stated:

The question whether a single conspiracy, rather than multiple conspiracies, has been proved is a question of sufficiency of the evidence. A single conspiracy can include subgroups or subagreements and the evidence does not have to exclude every hypothesis other than that of a single conspiracy. A single conspiracy exists, as compared with multiple conspiracies, where there is one overall agreement to perform various functions to achieve the objectives of the conspiracy.

*Id.* at 1377 (internal quotation marks and citations omitted).

The court has reviewed the superseding indictment and concludes that there is no basis for this court to require the government to demonstrate a factual basis for the conspiracy charged in Count One. Defendant Shabazz's motion to dismiss count one (# 150) is denied.

*Defendant Shabazz's Motion to Suppress Photographic Identifications (# 152–1) and for Production of Photos Used in Photo-Army Identifications (# 152–2)*

Defendant Shabazz moves the court for an order suppressing all testimony concerning pretrial photo-array identification by government witnesses of defendant Shabazz as an individual involved in the scheme to defraud charged in the superseding indictment.

The government opposes the motion on the grounds that defendant Shabazz has not stated why or how the photo-array was unduly suggestive.

■ Whether a pretrial identification is sufficiently suggestive to taint subsequent in-court identification is determined by using a five-step totality of the circumstances test. *Neil v. Biggers,* 409 U.S. 188, 199, 200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). If it is determined that the out-of-court identification procedure was impermissibly suggestive, then the court must decide whether an in-court identification will be allowed. In deciding whether to allow an in-court identification, the court must address five factors: (1) the opportunity of the witness to view the criminal during the crime; (2) the degree of attention paid by the witness; (3) the accuracy of the witness' prior description of the criminal; (4) the witness' level of certainty at the identification confrontation; and (5) the length of time between the crime and the identification confrontation.

This appears to be a general motion directed at all identifications with no specific grounds for suppression as to any particular procedure. Defendant Shabazz's motion to suppress photographic identifications (# 152–1) and for production of photos used in photo-array identifications (# 152–2) is denied.

*Defendant Shabazz's Motion for Disclosure of Identity(ies) of Informant(s) (# 153)*

The government represents that the names of witnesses, including the informant, have been disclosed. The court accepts the government's representation. There is no present controversy. Defendant Shabazz's motion for disclosure of identity(ies) of informant(s) (# 153) is deemed moot.

*Defendant Shabazz's Motion in Limine re Order for Jencks' Materials (# 154)*

There is no present controversy. Defendant Shabazz's motion in limine re order for Jencks' materials (# 154) is deemed moot.

*Defendant Shabazz's Motion for Bill of Particulars (# 156)*

■ Defendant Shabazz seeks a bill of particulars specifying "the identity of all persons whom the government will contend, at the time of trial, are unindicted co-conspirators" and "[a] statement as to the date, place and manner in which the government claims Mr. Shabazz became a member of the conspiracy charged in Count One of the indictment." Motion for Bill of Particulars, p. 1.

The purpose of the bill of particulars is to inform the defendant of the nature of the charges against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to protect against double jeopardy. *United States v. Mitchell,* 744 F.2d 701, 705 (9th Cir.1984); *United States v. Giese,* 597 F.2d 1170, 1180 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979).

In *United States v. DiCesare,* 765 F.2d 890, 897 (9th Cir.1985), the court concluded that the names of unindicted co-conspirators do not warrant a bill of particulars. In addition, the superseding indictment indicates that defendant Shabazz has been a member of the conspiracy since at least March 15, 1995. Superseding Indictment, p. 11. The court finds that the superseding indictment and the information provided in discovery provide defendant Shabazz with all of the information necessary to prepare his defense. Defendant Shabazz's motion for bill of particulars (# 156) is denied.

*Defendant Shabazz's Motion for Leave to File Supplemental Motions (# 157)*

The motion is granted.

*Defendant Shabazz's Request for Summary of Expert Witness Testimony (# 158)*

To date, the government has identified no expert witnesses. There is no controversy. Defendant Shabazz's request for summary of expert witness testimony (# 158) is deemed moot.

*DEFENDANT SHAKUR SHABAZZ DEFENDANT RICKIE DARNELL SYKES DEFENDANT ORLANDO A. VANCE, JR.*

*Defendant Shabazz's Motion for Issuance of Third–Party Subpoenas (FRCP 17(c)) (# 161–1) or, in the Alternative, for an Order Directing the Government to Obtain and Produce Records # (161–2)*

*Defendant Sykes' Motion to Quash Subpoena (FRCP Rule 17(c)) (# 188)*

*Defendant Sykes' Motion for Protective Order/Modification of Subpoena 17(c) (# 189)*

*Defendant Sykes' Amended Motion for Protective Order/Modification of Subpoena 17(c) (# 213)*

*Defendant Orlando A. Vance Jr.'s Motion for In Camera Inspection (# 220–1), Redaction (# 220–2) and Protective Orders Regarding Confidential Material (# 220–3)*

 Defendant Shabazz moves for the issuance of subpoenas to third parties under Fed.R.Crim.P. 17(c), which fall under the following categories:

### 1. *Custodial and State Agency Records*

Defendant Shabazz seeks the issuance of subpoenas to ten state agencies to obtain the following information about defendants Rickie Darnell Sykes, Orlando A. Vance, Jr., Deminica Marche Vance, and eight unindicted co-conspirators:

(1) All presentence investigation reports and parole and probation file documents describing or referring to job skills, employment, education, work history, known associates, known crime-partners, prior criminal conduct, mental health problems and treatment, and involvement in fraud, theft or other financial crimes.

(2) All correctional institution or jail/detention facility file documentation describing or referring to job skills, employment, education, work history, known associates, known crime-partners, prior criminal conduct, mental health problems and treatment, and involvement in fraud, theft or other financial crimes.

(3) All Computerized Criminal History documentation.

Attachment A to Motion for Issuance of Third–Party Subpoenas, p. 1.

Defendant Shabazz explains that the twelve individuals for whom this information is sought all have previous law enforcement contacts. Defendant Shabazz believes that "several of these individuals have been in prison, where they may have met and conspired together to perpetrate the criminal conduct involved in this case. It is Mr. Shabazz' further belief that the files of the state agencies ... will contain information concerning job training and employment by one or more of the afore-described individuals that will establish their possession of the same skills (in the fields of computer graphics and printing) that the government contends enabled Mr. Shabazz to commit the crimes charged in this case." Memorandum in Support of Motion for Third–Party Subpoenas, p. 3.

### 2. *Psychiatric Records for Defendant Sykes*

Defendant Shabazz contends that defendant Sykes received a psychiatric evaluation in 1991 in connection with a plea of Guilty Except for Insanity, and that records and documents pertaining to the psychiatric condition of defendant Sykes are likely to disclose that he is a pathological liar.

### 3. *Financial and Bank Records of Defendant Sykes*

Defendant Shabazz contends that these records may show that it was defendant Sykes and not defendant Shabazz who had possession and control over inexplicably large sums of money during the time of the alleged conspiracy.

### 4. *Notes of Witness Interviews Conducted by Bank Security Officers*

### 5. *Records and Documents Pertaining to Skillful Howard Davis, an Unindicted Co–Conspirator, in the Possession of First Interstate Bank*

The government contends that the effort of defendant Shabazz to obtain information relating to unindicted co-conspirators who may not even be called by the government as

witnesses lacks the requisite foundational showing of relevancy and admissibility under Rule 17(c).

Defendant Sykes has filed a motion to quash the subpoenas for information related to him on the grounds that the requests are overly broad, marginally relevant, and violate confidentiality protections provided under state and federal laws. In addition, defendant Sykes moves the court for a protective order modifying the Rule 17(c) subpoenas to provide limits upon the use and dissemination of the information requested.

Defendant Orlando Vance, Jr. moves the court for an *in camera* inspection of the materials and for an order that the materials deemed confidential be used in connection with the preparation and trial of this case only.

Rule 17(c) of the Federal Rules of Criminal Procedure states that:

A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

Rule 17(c) requires a showing of relevancy, admissibility and specificity to support the issuance of a subpoena duces tecum. *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984).

The court finds that defendant Shabazz has made the required showing of relevancy, materiality and specificity of the information requested. The court will allow counsel to inspect the documents requested subject to an appropriate protective order.

The court will order issuance of the Rule 17(c) subpoenas requested in Attachment A, Sections A and B, to the Motion for Issuance of Third–Party Subpoenas (# 161). The subpoenas shall provide that the documents be returned to the court at Room # 1107 of the United States Courthouse. The court will release the documents to the Federal Defender's Office after a protective order has been signed by the court. All defense counsel may view the documents subject to the provisions of the protective order. No copies shall be made. The court will conduct a further hearing, at which time defense counsel may move the court to allow a specific document or portion of a document to be used in a specific way.

The protective order shall provide that, subject to further order of this court, the material may be viewed by counsel for the defendants and counsel for the government and persons regularly employed by such counsel only; that the information therein may be used only in connection with the preparation and trial of this case; and that all such individuals are restrained from disclosing such information to any person other than 1) counsel for the other defendants and persons regularly employed by such counsel; and 2) the court. At the conclusion of this case, all materials produced subject to the Rule 17(c) subpoenas will be returned to the court.

The Rule 17(c) subpoenas requested in Attachment A, Sections C, D and E, to the Motion for Issuance of Third–Party Subpoenas (# 161) are granted. These items are not subject to a protective order.

### DEFENDANT DANA TYRONE ROYAL

*Defendant Royal's Motion for Severance of Defendants (# 130)*

■ Defendant Royal moves the court for an order severing his trial from that of all co-defendants on the ground that he is charged in only three of the thirty-nine counts of the superseding indictment. Defendant Royal contends that a joint trial would create an unfair atmosphere of guilt.

There are no grounds to support a severance in this conspiracy case. Any issues of disproportionate evidence can be dealt with through jury instructions. Defendant Royal's motion for severance of defendants (# 130) is denied.

*Defendant Royal's Motion to Suppress Statements (# 163)*

Defendant Royal moves the court to suppress the statements that he made to federal authorities at the time of his arrest on the grounds that the statements were rendered involuntary because he had not been brought before a federal magistrate prior to his making the statements, and he was unaware of any federal charges pending against him until agents of the FBI contacted him in jail.

The government relies upon defendant Royal's admission that he was advised of his rights under *Miranda* and signed a form, FD–395, acknowledging those rights.

Furthermore, Special Agent LaMonica states in his affidavit:

37. On September 1, 1997, Dana Tyrone Royal was arrested by Portland Police on outstanding local arrest warrants. On September 2, 1997, Mr. Royal appeared in Multnomah County court to answer to their charges. Also on September 2, 1997, the United States Government submitted a Motion for a Writ of Habeas Corpus Ad Prosequedum in order to bring Mr. Royal into federal custody. On September 3, 1997, the Writ was signed, authorizing the U.S. Government to bring Mr. Royal into federal court on September 5, 1997. Mr. Royal appeared in federal court on September 5, 1997, for his arraignment. On September 3, 1997, Mr. Royal was interviewed at the Multnomah County Detention Center by myself and Agent Frank Heckendorn. Before any questioning began, I read Mr. Royal his Miranda Rights from a form FD–395. After reading Mr. Royal his rights, I asked him if he understood his rights. He told me that he did. I then read him the Waiver of Rights portion of the form. I asked him if he was willing to answer questions, and he advised that he was. Mr. Royal then signed the bottom of the form, witnessed by myself and Agent Heckendorn. A copy of the form has been provided to Mr. Royal through his attorney....

Affidavit of Special Agent Joseph R. LaMonica, pp. 10–11 (attached to the Government's Consolidated Response in Opposition to Motions of Defendants Shabazz, Royal and Ford).

The government has carried its burden to prove that the statements were voluntarily made. There are no facts in this record to support defendant Royal's assertion that the statements he made were not voluntarily made. Defendant Royal's motion to suppress statements (# 163) is denied.

*Defendant Royal's Motion to Dismiss Count One—Duplicity (# 164)*

For the reasons stated in the ruling upon the motion of defendant Shabazz to dismiss count one (# 150), defendant Royal's motion to dismiss count one—duplicity (# 164) is denied.

*Defendant Royal's Motion for Early Production of Jencks Act Material (# 165)*

There is no present controversy regarding this motion. Defendant Royal's motion for early production of Jencks Act material (# 165) is deemed moot.

*Defendant Royal's Motion to Reveal Statements of Co–Conspirators (# 168)*

There is no present controversy regarding this motion. Defendant Royal's motion to reveal statements of co-conspirators (# 168) is deemed moot.

*Defendant Royal's Motion for a Bill of Particulars (# 215)*

For the reasons stated in the ruling upon the motion of defendant Shabazz for a bill of particulars (# 156), defendant Royal's motion for a bill of particulars (# 215) is denied.

### PLAINTIFF UNITED STATES OF AMERICA

*Motion of the United States for Pretrial Discovery and Notice (# 179)*

The defendants object only to the government's request for "[w]ritten notice of an intention to offer a defense of alibi, stating the specific place or places at which the defendants claim to have been at the time of the offenses as alleged in the superseding indictment and the names, addresses and telephone numbers of each witness upon whom the defendant intends to rely to establish his or her alibi." Motion of the United

States for Pretrial Discovery and Notice, p. 3. The defendants contend that the notice of the defense of alibi pursuant to Rule 12.1(a) of the Federal Rules of Criminal Procedure is not appropriate in a conspiracy case where an individual is being held accountable for not only his own conduct, but for the conduct of others.

The defendants shall comply with Rule 12.1(a) of the Federal Rules of Criminal Procedure to the extent they are able to identify "the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi."

The motion of the United States for pretrial discovery and notice (# 179) is granted.

### RULING OF THE COURT

The ruling of the court is as follows:

Defendant Newborn's motion for severance (# 113) is denied;

Defendant Newborn's motion for early production of Jencks Act material (# 115) is deemed moot;

Defendant Ford's motion to suppress statements (# 146) is denied;

Defendant Shabazz's motion to suppress evidence (# 149) is denied;

Defendant Shabazz's motion to dismiss count one (# 150) is denied;

Defendant Shabazz's motion to suppress photographic identifications (# 152–1) and for production of photos used in photo-array identifications (# 152–2) is denied;

Defendant Shabazz's motion for disclosure of identity(ies) of informant(s) (# 153) is deemed moot;

Defendant Shabazz's motion in limine re order for Jencks' materials (# 154) is deemed moot;

Defendant Shabazz's motion for bill of particulars (# 156) is denied;

Defendant Shabazz's motion for leave to file supplemental motions (# 157) is granted;

Defendant Shabazz's request for summary of expert witness testimony (# 158) is deemed moot;

Defendant Shabazz's motion for issuance of third-party subpoenas (FRCP 17(c)) (# 161–1) or, in the alternative, for an order directing the government to obtain and produce records (# 161–2) is granted subject to the execution of an appropriate protective order;

Defendant Sykes' motion to quash subpoena (FRCP Rule 17(c)) (# 188) is denied;

Defendant Sykes' motion for protective order/modification of subpoena (# 189) is granted;

Defendant Sykes' amended motion for protective order/modification of subpoena 17(c) (# 213) is granted;

Defendant Orlando A. Vance Jr.'s motion for *in camera* inspection (# 220–1), redaction (# 220–2) and protective orders regarding confidential material (# 220–3) is granted in part and denied in part;

Defendant Royal's motion for severance of defendants (# 130) is denied;

Defendant Royal's motion to suppress statements (# 163) is denied;

Defendant Royal's motion to dismiss count one—duplicity (# 164) is denied;

Defendant Royal's motion for early production of Jencks Act material (# 165) is deemed moot;

Defendant Royal's motion for a bill of particulars (# 215) is denied; and

Motion of the United States for pretrial discovery and notice (# 179) is granted.

### ORDER

IT IS HEREBY ORDERED as follows:

Defendant Newborn's motion for severance (# 113) is DENIED;

Defendant Newborn's motion for early production of Jencks Act material (# 115) is deemed MOOT;

Defendant Ford's motion to suppress statements (# 146) is DENIED;

Defendant Shabazz's motion to suppress evidence (# 149) is DENIED;

Defendant Shabazz's motion to dismiss count one (# 150) is DENIED;

Defendant Shabazz's motion to suppress photographic identifications (# 152–1) and for production of photos used in photo-array identifications (# 152–2) is DENIED;

Defendant Shabazz's motion for disclosure of identity(ies) of informant(s) (# 153) is deemed MOOT;

Defendant Shabazz's motion in limine re order for Jencks' materials (# 154) is deemed MOOT;

Defendant Shabazz's motion for bill of particulars (# 156) is DENIED;

Defendant Shabazz's motion for leave to file supplemental motions (# 157) is GRANTED;

Defendant Shabazz's request for summary of expert witness testimony (# 158) is deemed MOOT;

Defendant Shabazz's motion for issuance of third-party subpoenas (FRCP 17(c)) (# 161–1) or, in the alternative, for an order directing the government to obtain and produce records (# 161–2) is GRANTED subject to the execution of an appropriate protective order;

Defendant Sykes' motion to quash subpoena (FRCP Rule 17(c)) (# 188) is DENIED;

Defendant Sykes' motion for protective order/modification of subpoena (# 189) is GRANTED;

Defendant Sykes' amended motion for protective order/modification of subpoena 17(c) (# 213) is GRANTED;

Defendant Orlando A. Vance Jr.'s motion for *in camera* inspection (# 220–1), redaction (# 220–2) and protective orders regarding confidential material (# 220–3) is GRANTED in part and DENIED in part;

Defendant Royal's motion for severance of defendants (# 130) is DENIED;

Defendant Royal's motion to suppress statements (# 163) is DENIED;

Defendant Royal's motion to dismiss count one—duplicity (# 164) is DENIED;

Defendant Royal's motion for early production of Jencks Act material (# 165) is deemed MOOT;

Defendant Royal's motion to reveal statements of co-conspirators (# 168) is deemed MOOT;

Defendant Royal's motion for a bill of particulars (# 215) is DENIED; and

Motion of the United States for pretrial discovery and notice (# 179) is GRANTED.

## OPINION AND ORDER

The matter before the court is the request (# 257) by defendant Shakur Shabazz for clarification of the opinion and order of this court filed on February 6, 1998.

## BACKGROUND

On February 6, 1998, this court filed an Opinion and Order ruling on twenty-four motions filed by defendant Shabazz and his various co-defendants. Defendant Shabazz requests clarification and/or augmentation referring to the following statement made in the reply filed by defendant Shabazz to the Government's Consolidated Response in Opposition to Motions of Defendants Shabazz, Royal and Ford filed on December 19, 1997 as follows:

Mr. Shabazz further moves to amend his *Motion for Discovery,* at pp. 1–2, so as to add a request for production of any and all federal or state presentence reports pertaining to Defendant Ricki Sykes (and any other cooperating witness), inclusive of any presentence report(s) relating to the instant case, and to amend his motion for issuance of third-party subpoenas, so as to add a request for all telephone records (inclusive of installation records, and month-to-month billings statements) of the Zedekiah Sykes Evangelical Association.

Request for Clarification of Opinion and Order, p. 2.

## CONTENTIONS OF DEFENDANT SHABAZZ

Defendant Shabazz seeks the federal presentence reports of witnesses cooperating with the government for review, examination, and possible use at the time of trial. In the alternative, defendant Shabazz requests that the court conduct an *in camera* review of the presentence report of each of the cooperating defendants and release such material contained therein as the court finds may be exculpatory or impeachment evidence

for use at trial by the defendants remaining in the case.

Defendant Shabazz states:

> It is reasonable to expect that the presentence reports of the cooperating defendant-witnesses in this case (in particular, defendants Sykes, Orlando Vance, Asia Bell, Brian Carver, Icis Cox, Jeri Lynn Ledbetter, Joe Smoot, and Daniel Tompkins), will each contain a narrative recount by the defendant-cooperating witness of his/her role in the offense. To the extent this statement fails to track the witnesses' testimony at the time of trial, it constitutes important impeachment material. If the statement makes no reference to Mr. Shabazz, it must be viewed as exculpatory in that it undermines the charge of conspiracy. Furthermore, it is anticipated that the presentence reports will contain information concerning drug use and/or receipt of consideration from the government for serving as a witness on its behalf, that may also be utilized to impeach the defendant-cooperating witnesses at the time of trial.

*Id.* at 3.

### CONTENTIONS OF THE GOVERNMENT

Initially, the government opposes the disclosure of "as yet unwritten Presentence Reports of cooperating witnesses who are not defendants in this case." Government's Response in Opposition to Defendant Shabazz's Request for Clarification of Opinion and Order, p. 2.

The government states that the court has already ruled that the federal presentence reports for defendants Ricki Sykes and Orlando Vance should be disclosed. The government contends that "[t]he court should deny discovery of any Presentence Reports, *other* than those specifically prepared for testifying defendants in this case (as opposed to other cases relating to various potential witnesses)." *Id.* at 4–5 (emphasis in original). The government contends that there has been no showing that further information could conceivably affect the outcome of this case.

### APPLICABLE LAW

Presentence reports are confidential. *United States v. Gallagher,* 99 F.3d 329, 332–

33 (9th Cir.1996). In *United States Dep't of Justice v. Julian,* 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988), the United States Supreme Court explained that:

> the courts have been very reluctant to give *third parties* access to the presentence investigation report prepared for some other individual or individuals. As the Government points out, one reason for this is the fear that disclosure of the reports will have a chilling effect on the willingness of various individuals to contribute information that will be incorporated into the report. A second reason is the need to protect the confidentiality of the information contained in the report. Accordingly, the courts have typically required some showing of a special need before they will allow a third party to obtain a copy of a presentence report.

*Id.* at 12 (emphasis in original) (citations omitted).

In *United States v. Schlette,* 842 F.2d 1574 (9th Cir.1988), the United States Court of Appeals for the Ninth Circuit concluded:

> *See Berry v. Department of Justice,* 733 F.2d 1343, 1352 (9th Cir.1984). As we have observed in a somewhat analogous circumstance,
>
>> [w]e cannot treat this test [that is, demonstration of a need for disclosure that serves the end of justice] *in vacuo.* We must take recognition first of the fact that whether such a "need" exists is a matter designedly left initially to the discretion of the trial judge. In the absence of an absolute prohibition against disclosure, an exercise of judicial discretion is manifestly required.
>
> *U.S. Indus., Inc. v. United States Dist. Court,* 345 F.2d 18, 21 (9th Cir.), *cert. denied,* 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965). But whether disclosure is warranted in a given case requires the court to balance the need for disclosure against the reasons for confidentiality.

*Id.* at 1581 (footnote omitted).

In *United States v. Strifler,* 851 F.2d 1197, 1201 (9th Cir.1988), the United States Court of Appeals for the Ninth Circuit stated that "[a] defendant is entitled to material in a

probation file that bears on the credibility of a significant witness in the case. *See Brady v. Maryland,* 373 U.S. at 87, 83 S.Ct. at 1196–97 (1963)."

## RULING OF THE COURT

This court has not entered an order in this case that any federal presentence report be turned over to the defendants. The court record shows that defendants Asia Bell, Brian Carver, Icis Cox, Jeri Ledbetter, Joe Smoot, and Daniel Tompkins have entered pleas of guilty before Magistrate Judge Donald C. Ashmanskas to the charges of bank larceny. Presentence reports were ordered, and the sentencings have been set for May 22, 1998 before Magistrate Judge Ashmanskas. The sentencing of Tompkins is set for May 28, 1998. The trial in this case is set for April 21, 1998. This court will not order the disclosure of the presentence reports for these individuals because they will not be completed prior to the date the trial begins in this case.

The co-defendants Ricki Sykes and Orlando Vance will be sentenced by this court on May 4, 1998 and May 18, 1998, respectively. The final presentence reports have been completed by the United States Probation Office, but these reports have not been adopted by the court. This court will review the presentence reports of defendants Ricki Sykes and Orlando Vance *in camera* in order to determine whether to allow defense counsel to review the presentence reports subject to a protective order.

## CONCLUSION

The request (# 257) by defendant Shakur Shabazz for clarification of the opinion and order of this court filed on February 6, 1998 is GRANTED. Defendant Shabazz's request to discover the federal presentence reports of defendants Asia Bell, Brian Carver, Icis Cox, Jeri Ledbetter, Joe Smoot and Daniel Tompkins is DENIED. The court will review the presentence reports of defendants Ricki Sykes and Orlando Vance *in camera* in order to determine whether to allow defense coun-

sel to review the reports subject to a protective order.

IT IS SO ORDERED.