In re McCLATCHY NEWSPAPERS, INC., dba The Sacramento Bee.

McClatchy Newspapers, Inc., dba The Sacramento Bee, Petitioner,

v.

U.S. District Court for the Eastern District of California, Respondent,

Mark Leslie Nathanson; United States of America; An Unnamed Public Official; An Unidentified Private Citizen, Real Parties in Interest.

United States of America, Plaintiff–Appellee,

v.

McClatchy Newspapers, Inc., dba The Sacramento Bee, Defendant– Appellee,

v.

Mark Leslie Nathanson, Appellant.

Nos. 01–70941, 01–10335.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 2001.

Filed Dec. 3, 2001.

Amended April 17, 2002.

Rex Heinke, Beverly Hills, CA, for petitioner McClatchy Newspapers, Inc.

James C. Harrison, San Leandro, CA, for the Unnamed Government Official.

Doe Counsel, for the Unidentified Private Citizen.

Before SCHROEDER, Chief Judge, NOONAN, and W. FLETCHER, Circuit Judges.

### ORDER

The opinion filed on December 3, 2001 is amended as follows:

At slip op. p. 16333, after new ¶ 3 and before ¶ 4, add the following:

The right "to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files have become a vehicle for improper purposes." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Courts have properly refused "to permit their files to serve as reservoirs of libelous statements for press consumption" or "as sources of business information that might harm a litigant's

competitive standing." *Id.* at 598, 98 S.Ct. 1306. But this case does not involve "the protection of minor victims of sex crimes from further trauma and embarrassment." *See Globe Newspaper v. Superior Court,* 457 U.S. 596, 607, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); nor is there present the governmental interest in protecting the privacy of jurors. *See Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 511, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); nor is there the governmental interest in preventing abuse of the civil discovery process. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 35–36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); nor is there the governmental interest in not tipping off suspects by disclosure of search warrants. *Times–Mirror Company v. United States,* 873 F.2d 1210, 1215–16 (9th Cir.1989). These cases do show that the need to protect individual privacy rights may, in some circumstances, rise to the level of a substantial governmental interest and defeat First Amendment right of access claims. No such interest has been established here. The Supreme Court has noted that the American view of the right to inspect and copy court documents is in contrast with English practice and embraces as an interest compelling disclosure "the citizen's desire to keep a watchful eye on the workings of public agencies" and "a newspaper publisher's intention to publish information concerning the operation of government." *Nixon v. Warner Communications, Inc.,* 435 U.S. at 598, 98 S.Ct. 1306.

With these amendments, the panel voted to deny the petition for rehearing. Judges Schroeder and Fletcher have voted to deny the petition for rehearing en banc and Judge Noonan recommended denying the petition for rehearing en banc.

The full court has been advised of the petition for en banc rehearing, and no judge of the court has requested a vote on the petition for rehearing en banc. Fed. R.App. P. 35(b).

The petition for rehearing is DENIED, and the petition for rehearing en banc is DENIED.

## OPINION

NOONAN, Circuit Judge:

McClatchy Newspapers, Inc., dba *The Sacramento Bee* (*The Bee*), seeks a writ of mandamus to reverse the final post-judgment order of the district court in response to *The Bee*'s request that it unseal, without redaction, two proffer letters offered by Mark Leslie Nathanson (Nathanson) in connection with his motion to reduce his criminal sentence. We grant the writ, vacate the order, and remand to the district court to unseal the letters and make them publicly available without redaction.

## FACTS AND PROCEEDINGS

On May 7, 1992, Nathanson was indicted on eight felony counts arising from federal offenses committed in his service from 1986 to 1992 as a member of the California Coastal Commission. On June 23, 1992, jury trial before Judge Lawrence K. Karlton was set for February 10, 1993, a date that was postponed. On June 3, 1993, Nathanson entered into a plea agreement. On June 24, 1993, he pleaded guilty to conducting his position as a Coastal Commissioner "as a racketeering enterprise," seeking bribes from fourteen persons dealing with the Coastal Commission in amounts ranging from $25,000 to $250,000. He also pleaded guilty to filing a false tax return in 1991, concealing one of the bribes he had received. The bribes were paid by identified real estate developers and by

persons owning homes on the coast. The $250,000 bribe was arranged with the help of Alan Robbins, a state senator later convicted of other federal crimes. On August 24, 1993, Nathanson was sentenced to imprisonment for 4 years and 9 months.

The plea agreement, paragraph 20, provided that if the government decided that Nathanson's cooperation warranted it, the government would, within one year of the imposition of sentence, move under Rule 35 of the Federal Rules of Criminal Procedure to reduce Nathanson's sentence. The government did not make such a motion, but one year to the day from his sentencing, Nathanson filed a motion to reduce his sentence, attaching to the motion two letters (the Proffer Letters) which he said pointed to information of value to the government. The first letter was from Nathanson's lawyer, Stephen L. Braga, to Assistant U.S. Attorney Geoffrey Goodman and was dated May 31, 1993, that is, shortly before Nathanson and the government agreed to his plea of guilty. The letter recounted a number of times in which a high political figure approached Nathanson to get Nathanson's assistance in obtaining campaign contributions from people who had received favorable action by the Coastal Commission. The second letter, dated August 11, 1994, was from Jerrold M. Ladar, another lawyer for Nathanson, to Assistant U.S. Attorney John K. Vincent. In this letter the same political figure was alleged by Nathanson to have sought favorable action from the Coastal Commission on behalf of friends and supporters. Nathanson also was reported to have agreed to a bribe, disguised as a consulting fee, to be paid by a developer seeking his support in action by the Coastal Commission.

No action was taken on Nathanson's motion to reduce sentence, a motion that did not quality as a Rule 35 motion because it was not made by the government. Nathanson's motion was not docketed, and it, together with the Proffer Letters, was placed in the clerk's safe, beyond public scrutiny.

Two years later, on August 27, 1996, Assistant U.S. Attorney John K. Vincent moved, pursuant to Fed.R.Crim.P. 35, to reduce Nathanson's prison sentence from 4 years, 9 months to 3 years, 9 months. The motion stated it was made "in light of assistance he had provided to the government, as well as humanitarian concerns about his skin condition." This motion qualified, in part, as a Rule 35 motion because it was made by the government. It did not, however, specify assistance to the government in a criminal case, as required by Rule 35. No hearing was held. On September 29, 1996, Judge Karlton granted the motion.

On September 14, 1999, Nathanson's probation officer filed a petition to revoke his probation for failure to pay restitution. *The Bee* learned of this proceeding and, on October 14, 1999, requested access to three documents numbered 175, 176, and 177 which were not in the file or referred to in the docket. *The Bee* noted that neither the Rule 35 motion nor court's order contained information "about the basis for the substantial reduction" of Nathanson's sentence. On November 9, 1999, the court held a hearing on *The Bee*'s request. The government now moved formally to seal the documents sought by *The Bee*. The court sealed the documents. On December 7, 1999, the court released the Proffer Letters in redacted form. The district court's reasons for its redactions were "the safety of the defendant, his well-being. And also the reputation of other people that the government has concluded there is no evidence to suggest were guilty of crimes but were nevertheless accused of crimes."

*The Bee* sought a writ of mandamus to obtain the unredacted letters. On January 22, 2001, we granted the writ, observing that the government conceded that it was "unable to identify specific facts that Nathanson's safety would be in greater jeopardy," and noting that the district court had not identified "any facts whatsoever" to support its redactions. We remanded to that court "to make factual findings in consideration of whether privacy interests alone justify the redactions."

On April 20, 2001, the district court found as fact, first, that there was "absolutely no reason to believe that the accusations [in the Proffer Letters] are true"; second, the court had placed no weight on the Proffer Letters in reducing Nathanson's sentence; third, the letters "contain no newsworthy information"; fourth, that, to the extent the high public official was accused of criminal conduct, the accusation was prejudicial to the official's reputation; fifth, that the allegations concerning campaign fund-raising would have "a serious adverse effect upon the official's public and private reputation" and that "given the widespread public suspicion of corruption," no amount of denial would "completely dispel suspicion"; sixth, that the private individual had an excellent reputation which was "a significant business asset" and that there was a substantial probability that, absent redaction, the ability of the individual and his company to complete current and anticipated business activities would be harmed; and finally, that "other innocent parties, including the private individual's partners and employees" would suffer harm directly attributable to the release of the unredacted letters. As a conclusion of law the court found its redactions to serve "the compelling interest of protecting both the privacy interests and the reputational interests" of the official, the private individual, and "other innocent persons."

*The Bee* again seeks the aid of this court.

### ANALYSIS

■ *The Bee* has framed its application to this court as an appeal or, in the alternative, as an application for a writ of mandamus. *The Bee* is not a party to *United States v. Nathanson;* hence, it lacks standing to appeal. *United States v. Sherman,* 581 F.2d 1358, 1360 (9th Cir.1978). We turn to whether the extraordinary remedy of mandamus is warranted. We are guided by the familiar factors set out in *Bauman v. U.S. District Court,* 557 F.2d 650, 654–55 (9th Cir.1977).

■ Because *The Bee* cannot appeal, the first factor is satisfied: *The Bee* has no other avenue of relief. The second factor, damage or prejudice to the petitioner, is equally satisfied: *The Bee* is denied access to court documents presumptively available to the press. *CBS, Inc. v. U.S. District Court for the Central District of California,* 765 F.2d 823, 826 (9th Cir.1985).

The third, and most important *Bauman* factor, is whether mandamus is required to rectify "clear error" by the district court. Such error is apparent. We remanded for a determination of "whether privacy interests alone" justify the redactions. The court's findings do not point to compelling privacy interests. The high public official has no privacy interest in freedom from accusations, baseless though they may be, that touch on his conduct in public office or in his campaign for public office. The private individual, who was found by the district court to do much business with public bodies, has no privacy interest in allegations, baseless though they may be, bearing on the way he does business with public bodies.

■ The right "to inspect and copy judicial records is not absolute. Every

court has supervisory power over its own records and files, and access has been denied where court files have become a vehicle for improper purposes." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Courts have properly refused "to permit their files to serve as reservoirs of libelous statements for press consumption" or "as sources of business information that might harm a litigant's competitive standing." *Id.* at 598, 98 S.Ct. 1306. But this case does not involve "the protection of minor victims of sex crimes from further trauma and embarrassment." *See Globe Newspaper v. Superior Court,* 457 U.S. 596, 607, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); nor is there present the governmental interest in protecting the privacy of jurors. *See Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 511, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); nor is there the governmental interest in preventing abuse of the civil discovery process. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 35–36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); nor is there the governmental interest in not tipping off suspects by disclosure of search warrants. *Times–Mirror Company v. United States,* 873 F.2d 1210, 1215–16 (9th Cir.1989). These cases do show that the need to protect individual privacy rights may, in some circumstances, rise to the level of a substantial governmental interest and defeat First Amendment right of access claims. No such interest has been established here. The Supreme Court has noted that the American view of the right to inspect and copy court documents is in contrast with English practice and embraces as an interest compelling disclosure "the citizen's desire to keep a watchful eye on the workings of public agencies" and "a newspaper publisher's intention to publish information concerning the operation of government." *Nixon v. Warner Commu-*

*nications, Inc.,* 435 U.S. at 598, 98 S.Ct. 1306.

■ Although not within the precise terms of our remand, the district court was concerned with a separate interest of both the official and the individual, that of reputation. Who could or would deny that reputation is a valuable asset? Who would dispute the district court's observation that a charge of corruption against a public official is difficult to dispel by denial? But injury to official reputation is an insufficient reason "for repressing speech that would otherwise be free." *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 841–42, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978). Silence enforced upon the press to protect the reputation of judges is more likely to "engender resentment, suspicion, and contempt much more than it would enhance respect." *Bridges v. California,* 314 U.S. 252, 271, 62 S.Ct. 190, 86 L.Ed. 192 (1941). The same is true of public officials and of real estate developers engaged in projects requiring governmental approval.

A decent newspaper will not publish Nathanson's accusations without also publishing the skepticism of Nathanson's credibility shared by the district judge and the office of the United States Attorney. If less scrupulous papers omit these significant doubts, these papers themselves will be of a character carrying little credibility.

*The Bee* began this protracted lawsuit in 1999 in an effort to discover why Nathanson had obtained a significant reduction in his sentence. That was a subject of legitimate public interest. The relevance vel non of the Proffer Letters to the reduction is something the press has a right to explore and to publish. No adequate justification for their redaction has been offered by the court or by the official and the

individual affected, counsel for whom have argued this case on this appeal.

The error in suppressing by redaction is clear, and the fifth *Bauman* factor, the importance and newness of the issue, is also satisfied: the press must be free to monitor the courts by access to their records; the application of this principle to the Proffer Letters is new.

As four of the five *Bauman* factors indicate, we grant the writ of mandamus. The order of the district court is VACATED. The case is REMANDED to the district court with instructions to unseal the Proffer Letters and make them publicly available.

VACATED AND REMANDED.