Opinion by Judge MURGUIA; Dissent by Judge REINHARDT.
OPINION
MURGUIA, Circuit Judge:
Defendant-Appellant James Ninete Leon Guerrero and his co-defendant Jose Cabrera Sabían are charged with the murder of a United States correctional officer. The Government has filed a notice of intent to seek the death penalty. This is an interlocutory appeal of the district court’s order denying Guerrero’s motion to seal his pretrial competency proceedings and related filings. We conclude that we do not have jurisdiction over the appeal pursuant to either the collateral order doctrine or a petition for a writ of mandamus, and therefore dismiss.
I. Background
On August 14, 2008, Guerrero and Sabían were indicted for first-degree murder, first-degree murder of a United States correctional officer, and murder by a federal prisoner serving a life sentence, in violation of 18 U.S.C. §§ 1111(a), 1114, and 1118. The Government filed a notice of intent to seek the death penalty.
In April 2011, Guerrero lodged with the district court for under seal filing a Motion for Hearing to Determine Competency of Defendant James Ninete Leon Guerrero, pursuant to 18 U.S.C. § 4241(a). Attached to the motion are a Competency Evaluation Report and a Neuropsychological Evaluation Report, both of which were prepared by a neuropsychologist. The Government subsequently filed a motion for a psychiatric or psychological examination of Guerrero to determine his competence to stand trial, which the district court granted. A Bureau of Prisons forensic psychologist submitted a forensic evalu *995 ation of Guerrero’s competence to stand trial.
Guerrero then lodged with the district court for under seal filing a Motion to Seal Competency Proceedings. Attached to the motion are six exhibits, including a 27-page “Social History Summary” of Guerrero and a 77-page memorandum chronicling defense counsels’ interactions with Guerrero. Guerrero requested that the district court seal the evidentiary hearing, all exhibits received into evidence or referred to by witnesses at the hearing, any post-hearing briefs, and any detailed findings of fact issued by the district court concerning Guerrero’s competency. The Government took no position in response to the motion to seal. Sabían opposed the motion.
The district court denied Guerrero’s motion to seal the competency proceeding and related documents, both with respect to the general public’s access and Sablan’s access specifically, unsealed the Motion for Hearing to Determine Competency, and scheduled Guerrero’s competency hearing.[1] This appeal followed. We permitted Sabían to file an answering brief before us. Guerrero requests that we direct the district court to conduct Guerrero’s competency proceeding and file all documents related to it under seal, while preserving codefendant Sablan’s access. We do not reach the merits of the district court’s ruling because we dismiss for lack of jurisdiction.
II. Jurisdiction
We first must address whether we have jurisdiction to review this non-final judgment, pursuant to either the collateral order doctrine or a writ of mandamus. Guerrero and the Government assert that we do have jurisdiction, while Sabían argues we do not. The jurisdictional questions appear to be matters of first impression in this circuit, as well as the other circuit courts.
A. Collateral Order Doctrine
Generally, an appellate court may hear appeals only from a district court’s final decision. 28 U.S.C. § 1291; see Coopers & Lybrand v. Livesay, 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (“Federal appellate jurisdiction generally depends on the existence of a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.” (internal quotation marks omitted)). However, “the collateral order doctrine accommodates a small class of rulings, not concluding the litigation, but conclusively resolving claims of right separable from, and collateral to, rights asserted in the action.” Will v. Hallock, 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006) (internal quotation marks omitted). Such decisions are “ ‘collateral to’ the merits of an action and ‘too important’ to be denied immediate review.” Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 130 S.Ct. 599, 603, 175 L.Ed.2d 458 (2009) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). In construing the limits of the narrow collateral order rule, the Supreme Court has recognized that “permitting piecemeal, prejudgment appeals ... undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation.” Id. at 605 (internal quotation marks omitted).
Three requirements must be met before we exercise collateral order review. The order must: “ ‘[1] conclusively determine the disputed question, [2] resolve an *996 important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.”’ Will, 546 U.S. at 349, 126 S.Ct. 952 (quoting P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)).
The first prong is satisfied in this case. The district court’s denial of Guerrero’s motion to seal conclusively determined the disputed question of whether to allow public access to Guerrero’s competency proceedings and related documents. See Islamic Shura Council of S. Cal. v. Fed. Bur. of Invest., 635 F.3d 1160, 1164 (9th Cir.2011) (“The district court’s decision to unseal an order conclusively determines the disputed question of whether to make the order a matter of public record.”).
The second prong, that the order resolve an important separate issue, is also established here. There is no dispute that the issue of whether the competency proceedings and associated materials are unsealed is “completely separate” from the merits of the Government’s case against Guerrero. See In re Sealed Case, 237 F.3d 657, 664-65 (D.C.Cir.2001) (holding that sealing issue is “completely separate from the underlying subpoena enforcement action.”). The district court’s order on the motion to seal does not affect the Government’s case or Guerrero’s defenses at trial. The proceedings and materials that Guerrero seeks to be sealed have been disclosed to the Government, and the district court issued a protective order providing that information obtained by the Government in relation to the competency evaluation is not admissible against Guerrero in his criminal proceeding, subject to certain exceptions.
The issue is also an “important” one. We note that motions to seal competency proceedings are very rare. We have identified only one (unpublished) district court ruling on such a motion, and no circuit court decisions. See United States v. Curran, 2006 WL 1159855 (D.Ariz. May 2, 2006) (unpublished). Nevertheless, Guerrero’s interests in the confidentiality of attorney-client communications, a fair trial, and privacy are clearly important to him.
Moreover, we must also consider the alternative possibility of the district court granting Guerrero’s motion to seal. Had Guerrero succeeded below, perhaps the Government would seek interlocutory review.[2] The public’s interest in open criminal proceedings is well-established and could present an important issue on appeal. See Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508, 104 S.Ct. 819, 78 L.Ed.2d 629 (1985) (“Press-Enterprise I”) (“Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.”).
The third prong of the collateral review order test is whether a decision is effectively unreviewable on appeal from a final judgment. Will, 546 U.S. at 349, 126 S.Ct. 952. An effectively unreviewable decision is one that “would imperil a substantial public interest or some particular value of a high order.” Mohawk, 130 S.Ct. at 605. We do not consider the “individualized jurisdictional inquiry” that Guerrero’s case presents, but instead focus on the “entire category to which a claim belongs.” *997 Id. In other words, we may only exercise collateral order review if all orders resolving motions to seal competency proceedings cannot “be adequately vindicated by other means.” Id. We are cautious in applying the collateral order doctrine, “because once one order is identified as collateral, all orders of that type must be considered collaterally.” C.I.R. v. JT USA, LP, 630 F.3d 1167, 1172 (9th Cir.2011) (emphasis added).
Guerrero argues that an order denying a motion to seal is effectively unreviewable on appeal because once “the cat is out of the bag,” there is no going back. Guerrero contends that because the information released can never be secret again, the sealing of competency proceedings implicates the attorney-client privilege that attaches to some of the related documents, his right to a fair trial, and his privacy interests. We find these arguments unpersuasive.
Guerrero’s reliance on attorney-client privilege is largely foreclosed by the Supreme Court’s decision in Mohawk, 130 S.Ct. at 609. In a wrongful termination action, Mohawk attempted to bring a collateral order appeal of the district court’s order that Mohawk disclose information about plaintiff Carpenter’s pre-termination interview with Mohawk’s counsel. Id. at 603-04. The district court had ruled that Mohawk had waived attorney-client privilege. Id. The Supreme Court held that decisions adverse to the attorney-client privilege, as a class, are not effectively unreviewable on appeal of a final judgment, and therefore not subject to collateral order review. Id. at 606. The Court held that “the limited benefits of applying the blunt, categorical instrument of § 1291 collateral order appeal to privilege-related disclosure orders simply cannot justify the likely institutional costs.” Id. at 608 (internal quotation marks and citation omitted).
The Supreme Court went on to hold that the important right to attorney-client confidentiality is sufficiently protected by postjudgment appeals: “Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.” Id. at 606-07. The Court further explained that deferring review until final judgment will not chill attorney communications because “clients and counsel are unlikely to focus on the remote prospect of an erroneous disclosure order, let alone on the timing of a possible appeal.” Id. at 607. Moreover, parties must already account for the real possibility of disclosure due to a misapprehension of the privilege’s scope, waiver, or the crime-fraud exception. Id.
There being no discernible harm to the public interest, the Supreme Court further held that the remaining harm to the individual litigant from an erroneous disclosure of confidential communications could be adequately, if imperfectly, remedied by review after final judgment. Id. at 607-08. The Court identified the availability of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and the extraordinary writ of mandamus as “safety valve” mechanisms for the prompt corrections of serious errors. The Court further recognized the possibility of refusing disclosure and appealing the district court’s imposition of sanction, as well as the availability of protective orders to limit spillover effects of disclosure. Id. Finally, the Court explained that the need to ensure that the class of collaterally appealable orders remains narrow has acquired special force with the recent “enactment of legislation designating rulemaking, ‘not expansion by court decision,’ as the preferred means for determining whether and when prejudg *998 ment orders should be immediately appeal-able.” Id. at 609 (quoting Swint v. Chambers County Com’n, 514 U.S. 35, 48, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995)).
Mohawk thus establishes that, at least in the civil context, adverse attorney-client privilege rulings are not effectively unreviewable on appeal. We conclude that the reasoning in Mohawk also applies to orders denying motions to seal competency hearings in criminal proceedings.
As with civil litigation, we doubt that the possibility of open competency proceedings would chill criminal defendants’ communications with their attorneys, particularly given the gravity of the punishment that many defendants face. Although an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) or defiance of a discovery order is not available in a criminal proceeding, a writ of mandamus may sometimes be, as is a protective order that limits the scope of disclosure and the admissibility of the communications in future criminal proceedings. And in the last resort, appellate courts can remedy the improper disclosure of privileged material by vacating the judgment.
Guerrero also cites to our post-Mohawk holding in Islamic Shura Council, 635 F.3d at 1164. In Islamic Shura Council, we considered an interlocutory appeal of a district court’s decision to unseal an order regarding documents requested pursuant to the Freedom of Information Act (“FOIA”). We explained that once the order was unsealed, “the unsealing cannot be reversed,” and any later government appeal would be moot. Id. at 1164.[3] However, Islamic Shura Council is readily distinguishable because in that case, the government sought to prevent the disclosure of sensitive law enforcement and national security information that the government contended could be properly withheld under FOIA. Id. at 1165. Our conclusion that later review could not ameliorate the government’s disclosure of such sensitive information does not suggest that public access to competency proceedings is also effectively unreviewable on appeal. Neither the harm or redressability of improper disclosure of documents related to national security is comparable to any concerns raised by public access to a criminal defendant’s competency proceedings.
Further, any alleged incursions on criminal defendants’ rights to privacy and a fair trial do not render the unsealing order effectively unreviewable on appeal such that collateral order review would be justified. While these interests are significant, we do not see how they would be substantially imperiled by open competency proceedings. It is possible that the press might report on once private details of a criminal defendant’s life that are disclosed at the proceeding and in related documents. However, there is no authority for the proposition that a defendant’s preference that his personal history be kept personal justifies denial of public access to criminal proceedings. Further, countless competency proceedings have been held publicly without compromising the fairness of subsequent trials. Aso, as the district court stated, alternatives to sealing, such as careful screening of prospective jurors and moving the location of the trial, are available to protect defendants’ right to a fair trial.
Like orders denying motions to seal competency proceedings, orders granting these motions are also not effectively unreviewable on appeal. Third parties challenging orders denying public access to proceedings or documents do not have standing to appeal directly, and *999 therefore could not seek collateral order review. See In re McClatchy Newspapers, Inc., 288 F.3d 369, 373 (9th Cir.2002) (citing United States v. Sherman, 581 F.2d 1358, 1360 (9th Cir.1978)) (newspaper, which was not a party to criminal action, lacks standing to appeal district court order sealing documents). However, they may petition this Court for a writ of mandamus. See, e.g., Oregonian Pub. Co. v. U.S. Dist. Court., 920 F.2d 1462 (9th Cir.1990) (granting petition for writ of mandamus to direct release of plea agreement documents); Associated Press v. U.S. Dist. Court, 705 F.2d 1143 (9th Cir.1983) (granting petition for writ of mandamus to direct unsealing of pretrial documents). Therefore, even if the district court had granted Guerrero’s motion, mandamus review is available and so the order would not be effectively unreviewable.
We conclude that any benefits of immediate appeal of a district court’s order resolving a motion to seal competency proceedings and related documents is not “sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes.” Mohawk, 130 S.Ct. at 605. Every year our nation’s state and federal courts conduct thousands of competency evaluations. See Jason R. Marshall, Two Standards of Competency Are Better than One: Why Some Defendants Who Are Not Competent To Stand Trial Should Be Permitted To Plead Guilty, 37 U. Mich. J.L. Reform 1181, 1186 (2004) (stating that an estimated 25,000 to 60,000 competency evaluations are performed annually in the United States). The lack of appeals to date of orders resolving motions to seal these proceedings suggests that trial courts are effectively and efficiently balancing defendants’ interest in privacy with the public’s interest in access. We decline to open the door to a potential inundation of piecemeal appeals of these rulings, which would delay district court litigation and burden our Court. See id. at 608.
The class of claims can be adequately vindicated by the possibility of a writ of mandamus, rigorous juror screening, possible relocation of the trial, protective orders, and if appropriate, post-judgment relief. Therefore, “the chance that the litigation at hand might be speeded, or a particular injustice averted, does not provide a basis for jurisdiction under § 1291.” Id. at 605 (internal quotation marks and alterations omitted).
B. Writ of Mandamus
In the alternative, Guerrero petitions for a writ of mandamus. The writ of mandamus “is a drastic and extraordinary remedy reserved for really extraordinary causes.” Cheney v. U.S. Dist. Court, 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (internal quotations marks omitted). We consider five factors in determining whether mandamus relief is appropriate: (1) whether the petitioner has no other means to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court’s order is clearly erroneous as a matter of law; (4) whether the district court’s order is an oft repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court’s order raises new and important problems or issues of first impression. Bauman v. U.S. Dist. Court, 557 F.2d 650, 654-55 (9th Cir.1977). “[T]he absence of the third factor, clear error, is dispositive.” Perry v. Schwarzenegger, 591 F.3d 1147, 1156 (9th Cir.2010) (internal quotation marks and citation omitted). Guerrero has the “burden of showing that his right to the issuance of the writ is clear and indisputable.” Bauman, 557 F.2d at 656 (internal quotation marks and alterations omitted). The district court did not clearly err in denying Guerrero’s motion to seal, and therefore Guerrero cannot satisfy the requirement for a writ of mandamus.
*1000 As we review for clear error on a petition for mandamus, we need not resolve the underlying legal issue of public access to competency proceedings. So long as we are not firmly convinced that the district court was wrong, “we cannot hold the district court’s interpretation to be clearly erroneous, and thus we cannot issue the writ, even though the district court’s interpretation might be overruled later on direct appeal.” DeGeorge v. U.S. Dist. Court, 219 F.3d 930, 936 (9th Cir.2000). Accordingly, we consider briefly the relevant law to determine only if the district court clearly erred.
Whether there is a public right of access to criminal competency proceedings is a matter of first impression. See United States v. Kaczynski, 154 F.3d 930, 932 (9th Cir.1998) (declining to resolve media’s First Amendment claim of access to defendant’s court-ordered psychiatric competency report). We begin with the press and public’s “presumed right of access to court proceedings and documents” under the First Amendment. Oregonian Pub. Co., 920 F.2d at 1465 (citing Press-Enterprise I, 464 U.S. at 510, 104 S.Ct. 819). The Supreme Court has explained that openness enhances both the fairness of a criminal trial and the appearance of fairness that is essential to public confidence in the system. Press-Enterprise I, 464 U.S. at 508, 104 S.Ct. 819. To determine whether there is a right of access to a particular kind of hearing, we look to the Supreme Court’s two-part “experience” and “logic” test. Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (“Press-Enterprise II”): If a proceeding satisfies the test, a qualified First Amendment right of access arises, which can be overcome “only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.” Id. at 9, 106 S.Ct. 2735.
1. Experience
The “experience” prong of the First Amendment access test considers “whether the place and process have historically been open to the press and general public.” Id. at 8, 106 S.Ct. 2735. The experience requirement “does not look to the particular practice of any one jurisdiction, but instead ‘to the experience in that type or kind of hearing throughout the United States.’ ” El Vocero de P.R. v. Puerto Rico, 508 U.S. 147, 150, 113 S.Ct. 2004, 124 L.Ed.2d 60 (1993) (per curiam) (quoting Rivera-Puig v. Garcia-Rosario, 983 F.2d 311, 323 (1st Cir.1992) (emphasis in original)).
We are aware of only one (unpublished) federal court decision discussing whether there is a First Amendment right of access to a competency proceeding, United States v. Curran, 2006 WL 1159855 (D.Ariz. May 2, 2006) (unpublished).[4] In Curran, the district court found that mental competency hearings have historically been open to the public absent specific facts supporting closure. Id. at *2. The court relied primarily on four state court cases holding that mental competency proceedings should be open to the public.[5] *1001 Moreover, we are persuaded by Guerrero’s failure to identify any court’s restriction of access to competency hearings. Our own research reveals no decision denying open access to competency proceedings, and one additional state court decision granting access. The district court did not clearly err in concluding that competency proceedings of a criminal defendant have historically been open to the public and press.
2. Logic
The “logic” element inquires “whether public access plays a significant positive role in the functioning of the particular process in question.” Press-Enterprise II, 478 U.S. at 8, 106 S.Ct. 2735. The district court stated that the value of ensuring public access to criminal proceedings is well settled and that nothing in federal law provides that competency hearings should be closed to the public. We agree.
Our conclusion is informed by First Amendment access rights to other criminal proceedings. Public access to criminal trials and juror selection is “essential to the proper functioning of the criminal justice system.” Id. at 11-12, 106 S.Ct. 2735. Additionally, the Supreme Court has held that there is a qualified First Amendment right of access to a preliminary hearing in California, as it is “often the final and most important step in the criminal proceeding.” Id. at 12, 106 S.Ct. 2735. We have gone further, holding that there is a general First Amendment right of access to pretrial hearings and documents. See Associated Press, 705 F.2d at 1145. In contrast, grand jury proceedings are a “classic example” of “government operations that would be totally frustrated if conducted openly.” Press-Enterprise II, 478 U.S. at 8-9, 106 S.Ct. 2735.
An adversarial competency hearing better resembles a criminal trial or a preliminary hearing than it does a grand jury proceeding. In competency proceedings, a defendant has the right to be represented by counsel and the opportunity to testify, present evidence, subpoena witnesses, and to confront and cross-examine witnesses. 18 U.S.C. § 4247(d). Moreover, like preliminary hearings, competency hearings may determine the critical question of whether a criminal defendant will proceed to trial. A court’s decision on whether a defendant is able to understand the nature of the proceedings against him and whether he is able to assist counsel in his defense is a critical part of the criminal process. Allowing public access to a competency hearing permits the public to view and read about the criminal justice process and ensure that the proceedings are conducted in an open, objective, and fair manner. Indeed, public confidence in the judicial system is especially significant where a defendant accused of a violent felony is not tried because he was found incompetent.
Accordingly, the district court did not clearly err in concluding that the logic prong of the First Amendment access test has been satisfied. As the experience and *1002 logic factors are both met, the district court did not clearly err in finding a qualified First Amendment right of access to mental competency hearings.
3. Guerrero’s rights
A qualified First Amendment right of public access is not absolute, but rather may accede to the rights of the accused. We therefore proceed to the district court’s consideration of whether Guerrero’s individual rights override the public’s qualified First Amendment right of access. The presumption of access may be overcome “only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.” Press-Enterprise I, 464 U.S. at 510, 104 S.Ct. 819. Closing a hearing requires that: “(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest.” Oregonian Pub. Co., 920 F.2d at 1466.
The district court held that Guerrero had not shown a substantial probability of irreparable harm if the competency proceedings are not sealed, or that there are no viable alternatives. This holding is not clearly erroneous.
a. Fair Trial
Guerrero argues that public disclosure of the detailed content of the competency evaluations and the bases for opinions expressed therein will violate his right to a fair trial. According to Guerrero, publicity of his case is significant. At least 85 news articles have been written about the crime and case by two news organizations based within the district, and newspapers elsewhere in the country have carried the stories.
Closure may be ordered on the basis of a defendant’s Sixth Amendment right to a fair trial only if, “first, there is a substantial probability that the defendant’s right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant’s fair trial rights.” Press-Enterprise II, 478 U.S. at 13-14, 106 S.Ct. 2735.
We have made clear that “pervasive publicity, without more, does not automatically result in an unfair trial.” Seattle Times Co. v. U.S. Dist. Court, 845 F.2d 1513, 1517 (9th Cir.1988). In assessing prejudicial effect, we look to the publicity’s “ ‘capacity to inflame and prejudice the entire community.’ ” Id. (quoting CBS v. U.S. Dist. Court, 729 F.2d 1174, 1180 (9th Cir.1984)). “The publicity must create a pattern of deep and bitter prejudice throughout the community.” Id. (internal quotation marks and alterations omitted).
The district court observed that while there has been some pretrial publicity, it was not so extensive or current that juror screening and possible relocation could not provide a fair trial. The vast majority of articles submitted by Guerrero are from only two media outlets, which are located near the penitentiary where the crime occurred. Guerrero has made no showing that any publicity from the disclosures at the competency hearing would generate “deep and bitter prejudice” through the “entire community.” Id. Moreover, he has not shown an open competency proceeding is likely to generate significant additional publicity. To the extent that alternatives to closure of the competency hearing are necessary, juror screening and relocation of the trial are available. See Press-Enterprise II, 478 U.S. at 15, 106 S.Ct. 2735 (stating that voir dire allows the court to identify any individual jurors “whose prior knowledge of *1003 the case would disable them from rendering an impartial verdict.”). The district court’s conclusion that Guerrero’s right to a fair trial does not overcome the public’s First Amendment right of access is not clearly erroneous.
b. Privacy
Guerrero also contends that the public right of access to the competency proceeding is outweighed by his right to privacy. Guerrero notes that the evaluation reports describe his mental illnesses and cognitive defects, his academic record as a child, his social history, physical and sexual abuse he experienced, and the names of Guerrero’s minor daughter and other relatives. The district court stated that to the extent that Guerrero’s privacy rights are cognizable, they are largely surrendered by the fact that he has placed his competency at issue.
We do not agree with the district court that a defendant surrenders his right to privacy because he may not be constitutionally fit to stand trial. The Supreme Court has “repeatedly and consistently recognized that the criminal trial of an incompetent defendant violates due process.” Cooper v. Okla., 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) (internal quotation marks omitted). The constitutional imperative to not try incompetent defendants does not itself deprive possibly incompetent individuals of their privacy rights. Moreover, courts have given weight to the privacy interests of defendants when considering access to judicial proceedings and related documents. See Times Mirror Co. v. United States, 873 F.2d 1210, 1216 (9th Cir.1989) (considering the privacy interest of individuals identified in search warrants and noting that “[o]ther courts have also taken account of the privacy rights of individuals when considering access requests to judicial documents.”).
However, even if the privacy rights of Guerrero and others named in competency documents constitute a compelling interest, there are alternatives to full closure of the competency proceedings that can protect these interests. Courts may issue protective orders, redact names from reports, and restrict the use of other people’s names during the hearing. Therefore, there are alternatives to closure and it was not clear error to conclude that Guerrero’s privacy interests do not override the First Amendment right of access.
c. Attorney-client privilege and work product
Guerrero argues that a public competency hearing would pierce the confidentiality that protects his communications with his attorney and his attorney’s work product. The district court found that Guerrero waived the privilege to the extent that he has put his competency at issue. As with Guerrero’s right to privacy, we disagree that Guerrero has waived the attorney-client privilege because he may not be fit for trial. However, Guerrero’s interest in maintaining the confidentiality of his attorney communications does not override the public’s interest in open proceedings.
Guerrero has not shown that his interest in maintaining the confidentiality of his attorney communications would be significantly harmed if the proceeding is open. See Oregonian Pub. Co., 920 F.2d at 1466 (requiring harm to a substantial interest and the absence of any alternatives before a proceeding may be closed). Guerrero has already agreed to share the privileged documents with the Government and his co-defendant, and the district court has issued an order that prohibits the use at trial of privileged information disclosed during the competency hearing. Because Guerrero’s confidential communications *1004 will not be used against him in a criminal proceeding, his primary interest in the privilege is protected. Any distress he may feel through public disclosure of information presented at the competency hearing does not overcome the public’s First Amendment right of access. Id. at 1465 (First Amendment right “can be overcome only by an overriding right or interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.” (internal quotation marks omitted)).
In denying the petition for mandamus, we do not decide whether the district court correctly denied Guerrero’s motion to seal competency proceedings. Rather, “[wjhether or not the district court’s interpretation ultimately withstands appeal, we cannot find it ‘clearly erroneous’ as that term is used in the mandamus analysis.” In re Van Dusen, 654 F.3d 838, 846 (9th Cir.2011). The district court did not clearly err in concluding that Guerrero’s asserted interests in the attorney-client privilege, a fair trial, and privacy do not overcome the public right to open proceedings. Because the district court did not commit clear error, we do not reach the four other factors necessary for granting mandamus. Guerrero has not established an indisputable right to the issuance of the writ, and we deny the petition for mandamus.
Because we do not have jurisdiction under either the collateral order doctrine or mandamus, the appeal is DISMISSED.

. The district court vacated the competency hearing pending resolution of this appeal.

. Had the district court ordered the competency hearings sealed, a third party, such as a newspaper, would not have had standing to appeal. See United States v. Brooklier, 685 F.2d 1162, 1165 (9th Cir.1982) ("This circuit has not recognized standing to appeal in persons such as Times Mirror and Blake who, though denied access to the proceedings, were not parties to the case below.”).

. We ultimately did not decide whether the second prong, resolution of an important issue separate from the merits, was satisfied and did not assert jurisdiction under the collateral order doctrine. Islamic Shura Council, 635 F.3d at 1164.

. The District Court for the District of Idaho denied a media motion to unseal a competency evaluation report, but did not apply the "experience” and “logic” test in making its ruling. In re Spokesman-Review, 2008 WL 3084252, *4-5 (D.Idaho Aug.05, 2008) (unpublished). The District Court for the Eastern District of Virginia, in deciding whether to close a hearing concerning a defendant's competency to waive counsel, noted that "[cjompetency hearings are routinely held in open court in this district.” United States v. Moussaoui, 2002 WL 1311734, at *1 (E.D.Va. June 11, 2002) (unpublished).

. See Miami Herald Pub. Co. v. Chappell, 403 So.2d 1342 (Fla.Ct.App.1981) (holding that competency proceedings should be open); *1001 Soc'y of Prof'l Journalists v. Bullock, 743 P.2d 1166, 1178 (Utah 1987) ("pretrial competency proceedings in criminal cases may be closed only upon a showing that access raises a realistic likelihood of prejudice to the defendant’s right to a fair trial.”); Cheyenne K. v. Superior Court, 208 Cal.App.3d 331, 256 Cal.Rptr. 68, 71 (1989) (holding that the public may attend a competency hearing for a minor charged with murder unless the minor establishes a reasonable likelihood of substantial prejudice to the right to receive a fair and impartial trial); In re Times-World Corp., 25 Va.App. 405, 488 S.E.2d 677, 682 (1997) (holding that the First Amendment and Virginia Constitution grant the media a qualified right to attend competency proceedings); but see People v. Atkins, 444 Mich. 737, 514 N.W.2d 148 (1994) (finding no qualified right of access to criminal mental competency reports that have not been admitted into evidence).